**UNITED STATES of America, ex rel., Walter M. DRAKE, Plaintiff–Appellant,**

**v.**

**NORDEN SYSTEMS, INC., and United Technologies Corporation, Defendants–Appellees.**

**Docket No. 03–6152.**

United States Court of Appeals, Second Circuit.

Argued March 8, 2004.

Decided July 14, 2004.

---

John Doar, New York, New York (Eileen Minnefor, Doar Rieck & Mack, New York, New York, of counsel), for Plaintiff–Appellant.

Richard L. Beizer, Washington, D.C. (Brian C. Elmer, Jeffrey E. Greene, Crowell & Moring LLP, Washington, D.C., of counsel), for Defendants–Appellees.

Before: WALKER, Chief Judge, CARDAMONE, and KEITH *, Circuit Judges.

* Honorable Damon J. Keith, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

CARDAMONE, Circuit Judge.

This appeal arises from the involuntary dismissal of plaintiff Walter M. Drake's (plaintiff or relator) civil action against a government defense contractor, defendant Norden Systems, Inc., now known as NSI, Inc. (Norden), and its corporate parent, defendant United Technologies Corporation (United Technologies). Drake, a Norden accountant, brought his action on behalf of the United States alleging that the defendants had made false claims for payment and otherwise defrauded the government in violation of the False Claims Act, 31 U.S.C. §§ 3729–3733 (2000). The allegations of the complaint, if they are proven, do not paint a pretty picture.

When Drake missed—by 17 months—a court-imposed deadline for amending his complaint, the United States District Court for the District of Connecticut (Burns, J.) dismissed the action for failure to prosecute. Drake appeals the judgment of dismissal, entered February 21, 2003, as well as the order on which it was based and a subsequent order denying his motion to be relieved from the judgment.

█ We do not doubt a district judge's authority to dismiss actions based on a plaintiff's failure to prosecute. Such authority is of ancient origin. Dismissal for want of prosecution could be imposed under the English common law if a plaintiff "suffer[ed] three terms to elapse without moving forward in the cause." 3 William Blackstone, *Commentaries* *451 (Univ. Chicago Press 1979) (1768). Today the district court's authority is expressly recognized in Federal Rule of Civil Procedure 41(b). *See Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Indeed, the involuntary dis-

missal is an important tool for preventing undue delays and avoiding docket congestion. *See id.* at 629–31, 82 S.Ct. 1386. But it is also one of the harshest sanctions at a trial court's disposal, since it usually extinguishes the plaintiff's cause of action and denies plaintiff his day in court. As a result, it is reserved for use only in the most extreme circumstances.

While we agree with the district court that Drake's 17–month delay was inexcusably long, we do not agree that the circumstances were sufficiently egregious or that Drake's actions were so contumacious as to warrant dismissal of his entire complaint. Thus, we hold it was an abuse of the district court's discretion to dismiss plaintiff's complaint.

## BACKGROUND

### A. *The False Claims Act*

The False Claims Act (Act) imposes civil liability on "[a]ny person" who

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

. . .

(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . . .

31 U.S.C. § 3729(a). The defendant is liable for treble damages, in other words, three times the amount of damages the government sustained on account of defendant's actions, and a civil penalty of up to $10,000 for each claim. *Id.*

The Act contains a so-called *qui tam* provision, which empowers private persons—called relators—to sue false claimants on behalf of the government. *See* 31 U.S.C. § 3730(b). The *qui tam* form of action appears to have existed in England since the late 13th century. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 768 n. 1, 774–78, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (discussing the etymology and history of the *qui tam* action). Blackstone described it and its consequences. *See* 3 William Blackstone, *Commentaries* \*160. The action has been recognized in American jurisprudence since the earliest days of our republic. *See Vt. Agency of Natural Res.,* 529 U.S. at 776–77, 120 S.Ct. 1858.

A relator commences a false claim action by filing the complaint under seal and giving the government an opportunity to intervene. *See* 31 U.S.C. § 3730(b). The government has an initial period of 60 days to intervene but it may move the court for an extension of time. *See id.* If the government chooses not to intervene, the relator may proceed with the action on the government's behalf. *See id.* at § 3730(c)(3). In either case, the relator will be entitled to a percentage of any award recovered. *See id.* at § 3739(d).

### B. *Drake's Complaint*

Plaintiff commenced his *qui tam* action on June 14, 1994 alleging that he had uncovered a number of False Claims Act violations committed by defendants. He filed the complaint under seal in accordance with the above procedures. The government investigated the matter for three years and, finally, on June 2, 1997, declined to intervene. The complaint was

then unsealed, served on defendants Norden and United Technologies, and later amended twice. Drake filed his second amended complaint on December 17, 1997.

He based his claims on billing and accounting practices that he uncovered as supervisor of facilities accounting in Norden's finance department. Plaintiff's claims are divided into four counts—two against Norden alone, one against United Technologies alone, and one against Norden and United Technologies together.

*Count 1* asserts Norden violated 31 U.S.C. § 3729(a)(1) and (a)(2) by knowingly presenting the United States with false claims for payment and backing up these claims with false records or statements. According to Drake, these claims, records, and statements were contained in the following categories of documents that Norden transmitted to the government: (1) progress bills, (2) certificates of indirect cost rates, (3) disclosure statements, (4) contracts, and (5) "Present Responsibility Reports." Drake alleges Norden's claims were false because they included: (a) unallowable property tax costs, (b) the depreciation costs of assets that either did not exist, had been sold or written off, or were unrelated to government contracts, (c) the depreciation costs of assets that were not capitalized according to Norden's written policy, and (d) certain costs that were inaccurately categorized as relating to research and development.

*Count 2* asserts Norden violated 31 U.S.C. §§ 3729(a)(7) and (a)(2) by making false statements to conceal an obligation to repay money to the United States. *Count 3* makes the same assertion against United Technologies. As with the statements alleged in Count 1, Drake alleges the false statements on which Counts 2 and 3 are based were contained in: (1) progress bills, (2) certificates of indirect cost rates,

(3) disclosure statements, (4) contracts, and (5) "Present Responsibility Reports."

*Count 4* asserts Norden and United Technologies conspired, in violation of 31 U.S.C. § 3729(a)(3), to defraud the United States by getting a false claim allowed or paid. According to Drake, this occurred after he brought Norden's improper accounting practices to United Technologies' attention. Instead of rectifying the situation, United Technologies allegedly entered into an unlawful understanding and agreement with Norden to conceal the misconduct and allow Norden to continue defrauding the government.

### C. *District Court's August 24, 2000 Ruling*

On January 27, 1998 defendants moved to dismiss the second amended complaint for failure to state a claim on which relief could be granted and for failure to plead fraud with sufficient specificity. Before the district court ruled on this motion, however, it stayed the case for six months in order to await a Supreme Court ruling in another case deciding whether False Claims Act relators have standing. Once the Supreme Court answered that question in the affirmative, *see Vt. Agency of Natural Res.*, 529 U.S. at 771–78, 120 S.Ct. 1858, the trial court proceeded to consider defendants' motion to dismiss, and rendered its decision on August 24, 2000.

With respect to the claims against Norden in Counts 1 and 2, the court granted the motion in part and denied it in part. It held that only the progress bills constituted claims for the purpose of subsection (a)(1), and that only the progress bills and certificates of indirect cost rates constituted records or statements for the purposes of subsections (a)(2) and (a)(7). To the extent that the § 3729(a)(1), (a)(2), & (a)(7) claims relied on these documents, the court denied the motion to dismiss. To

the extent the claims relied on other documents—i.e., disclosure statements, contracts, and "Present Responsibility Reports"—the district court dismissed these claims with prejudice.

It also held that Drake's allegations of Norden's improper research and development charges were insufficiently specific to support his causes of action. To the extent that Drake's § 3729(a)(1), (a)(2), & (a)(7) claims relied on these charges, the trial court dismissed those claims without prejudice. Other than above specified, it held Counts 1 and 2 adequately stated claims against Norden for violations of § 3729(a)(1), (a)(2) & (a)(7).

The trial court dismissed entirely Drake's Count 3 claim against United Technologies for violations of § 3729(a)(7), and his Count 4 claim against both defendants for violations of § 3729(a)(3). It dismissed the former with prejudice, because it held that United Technologies had no monetary obligations to the government to begin with, making it impossible for that defendant to have violated § 3729(a)(7) (since § 3729(a)(7) imposes liability for making a false statement to avoid an obligation to pay money to the government). The court dismissed Count 4 without prejudice because it held this claim was pleaded with insufficient specificity.

In sum, the district court disposed of the numerous allegations in plaintiff's complaint in three different ways, as follows: (1) It dismissed *with prejudice* the § 3729(a)(1), (a)(2) & (a)(7) claims against Norden to the extent that they relied on disclosure statements, contracts, and "Present Responsibility Reports," and the § 3729(a)(7) claim against United Technologies in its entirety. (2) It dismissed *without prejudice* the § 3729(a)(1), (a)(2) & (a)(7) claims against Norden to the extent that they relied on the insufficiently specific allegations of research and development

charges, and the § 3729(a)(3) claim against both defendants in its entirety. Finally, (3) the district court *left standing* the § 3729(a)(1), (a)(2), & (a)(7) claims against Norden to the extent that these claims relied on progress bills and certificates of indirect cost rates and to the extent that they did not rely on the allegations of research and development charges.

By dismissing some of Drake's claims without prejudice, the court left open the possibility that plaintiff could replead them with greater specificity. At the end of its decision, the district court wrote: "Relator shall file within 60 days a final amended complaint to conform the pleadings to this ruling within the confines of Fed.R.Civ.P. 15(c)."

### D. *Events Leading to Involuntary Dismissal*

For some reason, Drake did not file this final amended complaint within 60 days. According to Drake's brief on appeal, this was an inexcusable mistake on the part of Drake's then-counsel of which Drake was unaware.

On July 25, 2001—nine months after the 60–day deadline—the district court ruled on motions for partial summary judgment that the parties had previously filed. It denied Drake's motion, but granted defendants' motion. Defendants had attacked Drake's § 3729(a)(1), (a)(2) & (a)(7) claims to the extent that they relied on allegations of Norden failing to follow its own written policy on the capitalization of fixed assets. Defendants argued, and the court agreed, that these allegations would not make out a violation of the False Claims Act even were they true. The court therefore dismissed Drake's claims to the extent that they relied on these allegations. At the same time, it made clear that plaintiff still had other viable claims. It noted that Drake had not amended his complaint

within 60 days as required by its previous direction, but it did not indicate what the consequences to plaintiff of that failure would be.

On January 31, 2002 the district court's clerk sent notice to Drake that there had been no action taken in the case for six months, and that the case was therefore subject to dismissal under the court's local rules of procedure unless Drake submitted a satisfactory explanation for his delay within 20 days. Drake's counsel responded within 20 days by filing a third amended complaint and explaining that the delay had been caused by the complexity of the claims, the large amount of discovery and motions, and scheduling conflicts.

██ Defendants then moved to strike the third amended complaint and dismiss the case for failure to prosecute under Federal Rule of Civil Procedure 41(b). The district court granted that motion on February 19, 2003, and entered judgment for defendants two days later.[1] Drake moved to amend or alter the judgment and/or for relief from the judgment, and the district court denied this motion on June 17, 2003. From the order of dismissal and the order denying reconsideration, plaintiff appeals.

## DISCUSSION

██ We review a dismissal for failure to prosecute under the abuse of discretion standard. *See Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir.1993). We may find that the district court abused its discretion if its decision was based on an error of law or a clearly erroneous finding of fact. *Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir.2004). Further, although

the dismissal of a complaint is discretionary for a trial judge, we are not faced with a case in which the trial court's discretionary actions are based on its observations in the courtroom or its superior opportunity to get a "feel of the case." *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 216, 67 S.Ct. 752, 91 L.Ed. 849 (1947); Maurice Rosenberg, *Appellate Review of Trial Court Discretion*, 79 F.R.D. 173, 183–84 (1978). In this case, the appellate record contains all the materials upon which the district court's decision hinged. Thus, we need not blindly defer to the trial court's choice.

██ We have in fact fashioned guiding rules that limit a trial court's discretion in this context, *see Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir. 1993), out of recognition, as noted, that dismissal for failure to prosecute is a "harsh remedy to be utilized only in extreme situations." *Minnette*, 997 F.2d at 1027. In particular, we review the trial court's decision by examining whether: (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions. *See, e.g., Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir.2001); *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193–94 (2d Cir.1999). No one factor is dispositive, and ultimately we must review the dismissal in light of the record as a whole. *See Peart*, 992 F.2d at 461.

---

1. We note that while False Claims Act suits "may be dismissed only if the ... Attorney General give[s] written consent," 31 U.S.C. § 3730(b)(1), this restriction does not apply to involuntary dismissals like the one at issue here. *See Minotti v. Lensink*, 895 F.2d 100, 103–04 (2d Cir.1990).

## I The Five Factors

### A. *Duration*

■ The first factor to be examined breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration. *See Martens,* 273 F.3d at 180. The district court answered both questions in the affirmative, and we agree with its assessment.

■ Drake effectively concedes that there was no excuse for his counsel's delay, but he emphasizes that it was nonetheless his counsel rather than he himself who was at fault. This apportionment of blame between counsel and client, however, is best considered when we get to the fifth factor—efficacy of lesser sanctions. *See Dodson v. Runyon,* 86 F.3d 37, 39 (2d Cir.1996). The question we must ask with respect to duration is simply whether or not the delay was caused by plaintiff's side as a whole. Framed in this way, we agree with the district court that Drake's side was at fault.

We also agree that plaintiff's 17–month delay was significant. Indeed, this length of time is comparable to, if not longer than, delays that have supported dismissals in other cases. *See Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666–68 (2d Cir.1980) (six-month delay); *accord Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42–43 (2d Cir.1982) (noting that delays supporting dismissals have ranged from a matter of months to a period of years). If duration were the only factor, we would have no hesitation in affirming the district court's dismissal.

### B. *Notice*

The notice factor, in contrast, cuts against dismissal. The question we must answer here is whether Drake received notice "that further delays would result in dismissal." *E.g., Martens,* 273 F.3d at 180. He did not.

The only actual notice Drake received was the court clerk's warning that the case would be dismissed unless Drake submitted a satisfactory explanation for his delay within 20 days. Relator responded by submitting not only an explanation, but also the final amended complaint within that time. Nonetheless, his case was dismissed. While the district court questioned, in a footnote, whether the final amended complaint fully complied with the August 24, 2000 ruling, it did not base its decision on plaintiff's past delay, or on any defects in his final amended complaint.

This was not, then, notice that Drake's case would be dismissed if there was *further* delay. Rather, this was notice that relator's case would be dismissed as a result of the past delay. Apparently the only thing plaintiff could have done differently to save his case after receiving the notice would have been to provide a better explanation for the past delay. Simply ending the delay by filing the final amended complaint obviously was not enough.

Defendants argue that, regardless of the clerk's warning, Drake was on notice that he was risking dismissal through delay based on one of the District of Connecticut's Local Rules of Civil Procedure. During the period in question, Local Rule 16(a) read as follows

> In civil actions in which no action has been taken by the parties for six (6) months or in which deadlines established by the Court pursuant to Rule 11 appear not to have been met, the Clerk shall give notice of proposed dismissal to counsel of record. If such notice has been given and no action has been taken in the action in the meantime and no satisfactory explanation is submitted to the Court within twenty (20) days there-

after, the Clerk shall enter an order of dismissal. Any such order entered by the Clerk under this Rule may be suspended, altered, or rescinded by the Court for cause shown.

D. Conn. Local R. Civ. P. 16(a) (West 2002) (subsequently recodified to Local Rule 41(a) and amended slightly).

Far from placing Drake on notice that his case was subject to dismissal due to further delay, this rule suggested that plaintiff would receive notice from the clerk prior to any dismissal. Moreover, it suggested that once he received such notice, dismissal would occur only if he both (a) failed to take "action in the meantime" *and* (b) failed to submit a "satisfactory explanation."

Defendants point to language in *Shannon* indicating that a local rule of procedure may serve as notice that delay leads to dismissal. *See* 186 F.3d at 194 n. 7. We do not dispute this proposition. But, the critical question is what the local rule of procedure actually states. The rule in question in *Shannon* stated that "failure by the plaintiff to take action for four (4) months shall be presumptive evidence of lack of prosecution." *Id.* That language conveys a much different message than does the language in the District of Connecticut's Local Rule 16.

Defendants also argue that Drake's counsel was aware of his delay in amending the complaint based on various correspondence between the parties and the passing reference to this delay in the district court's July 25, 2001 summary judgment opinion. None of this put relator or his counsel on notice that the case would be dismissed if he continued to delay. In a March 2, 2001 letter to Drake's counsel, for instance, Norden's counsel simply noted his view that, having "reread [the district court's] August 24, 2000 order," and noticed the final sentence (regarding the amendment deadline), it was his view that Drake had failed to comply and should therefore obtain leave to amend the complaint before attempting to prepare a joint scheduling order. Clearly the notice factor does not favor dismissal.

## C. *Prejudice*

The next factor we examine is whether defendants are "likely to be prejudiced by further delay." *E.g., Martens,* 273 F.3d at 180. Although no further delay was contemplated in Drake's case (since Drake filed the final amended complaint after being reminded that it was overdue), the district court concluded that defendants had already been prejudiced by the delay that had occurred. It held that this prejudice could be presumed as a matter of law based on plaintiff's "lengthy and inexcusable delay." It also found this prejudice to exist as a matter of fact based on the decay of evidence. While Drake argues on appeal that the court should have held an evidentiary hearing before making any findings, he waived this argument by failing to request such a hearing until after the court had ruled against him. *See Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530 of Operative Plasterers & Cement Masons Int'l Assoc.,* 954 F.2d 69, 77 (2d Cir.1992) (holding that right to evidentiary hearing in preliminary injunction context was waived by failure to request it).

Prejudice may be presumed as a matter of law in certain cases, but the issue turns on the degree to which the delay was lengthy and inexcusable. *See Lyell,* 682 F.2d at 43. In cases where "delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Id.* In *Shannon,* for example, prejudice was presumed based on a two year delay in amending the complaint followed by a failure to respond to the

court's notice that the case would be dismissed if there were further delays. *See* 186 F.3d at 194–95. In *Lyell*, prejudice was presumed where the plaintiff repeatedly failed to file documents that the court ordered, even after being warned that he was risking dismissal. *See* 682 F.2d at 39–40, 43. While there is no question that Drake's delay was both lengthy and inexcusable, it was plainly less contumacious than the delays in either *Shannon* or *Lyell*.

 Even if we were to presume prejudice, it would be a rebuttable presumption. *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir.2001). Both sides submitted evidence to support their arguments, and the district court made a finding of fact that prejudice existed irrespective of the legal presumption. While we do not think this finding was clearly erroneous as a general proposition, there is no question that the degree of prejudice was not the same with respect to all of Drake's claims.

Plaintiff's second amended complaint contained claims that survived the August 24, 2000 and July 25, 2001 rulings and claims that were dismissed without prejudice (as well as claims that were dismissed with prejudice). With respect to the claims that survived the rulings, defendants were on notice of the charges against them. Defendants were therefore in a good position to preserve evidence and prepare their defense to these claims despite the delay in the essentially technical task of amending the complaint. With respect to the claims that were dismissed without prejudice, on the other hand, defendants were clearly in a much more difficult position. The reason these claims were dismissed was that they were insufficiently specific. Until these claims were repleaded, defendants were therefore in the dark as to the exact contours of the

charges against them and so they would have had a much harder time preparing their defense. Consequently, while we do not disturb the district court's general finding of prejudice, we do conclude that there was much less prejudice with respect the claims that survived the August 24, 2000 ruling than there was with respect to those that did not.

### D. Balance Between Calendar Congestion and Opportunity to Be Heard

The fourth factor we consider is the balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard. *See, e.g., Martens*, 273 F.3d at 182. The district court itself found that Drake's delay had not impacted the trial calender or otherwise impeded the court's work. Thus, it found that this factor militated against dismissal. We see no reason to doubt this conclusion.

### E. Consideration of Lesser Sanctions

Finally, we must consider whether lesser sanctions would have been sufficient to remedy any prejudice resulting from plaintiff's delay. *See, e.g., id.* The trial court briefly considered the possibility of imposing a fine instead of dismissing the case outright. It rejected this option, however, because it found that a fine would not adequately address the prejudice defendants had suffered. As with the district court's finding of prejudice, we cannot say that this was clearly erroneous. Yet, we must observe that the level of prejudice was not the same with respect to all of plaintiff's claims. The district court did not explain why a lesser sanction would have been insufficient to deal with plaintiff's delay in repleading those claims that survived the August 24, 2000 ruling and of which defendants were clearly on notice.

## II Record As a Whole

Looking at all of the above factors as well as the record as a whole, we are convinced that the district court abused its discretion in dismissing Drake's entire complaint. The circumstances of this case simply do not rise to the level needed to justify outright dismissal. While 17 months is unquestionably a lengthy delay, we are dealing with a case that had already been delayed by three years while the government contemplated intervention, and then another six months while the court awaited a Supreme Court ruling. Further, during the first nine months of plaintiff's delay, the parties were waiting for the court to rule on a pending summary judgment motion. More importantly, this is not a case in which the plaintiff "deliberately proceed[ed] in dilatory fashion," *Link*, 370 U.S. at 633, 82 S.Ct. 1386, or ignored repeated warnings and deadlines, or where plaintiff's conduct could be viewed as contumacious with respect to the district court's directions. On the contrary, plaintiff filed his final amended complaint as soon as he was warned that it was late. Dismissing the whole case anyway at that point, in our view, constituted an abuse of discretion.

Defendants argue that dismissal was justified with respect to all of the claims because the government was the real party in interest in this case and so plaintiff was not himself entitled to a day in court. We find this argument specious. Congress has granted private parties the right to bring certain claims on behalf of the government. *See* 31 U.S.C. § 3730(b). While these *qui tam* relators are constrained in certain ways with respect to government intervention and voluntary dismissal, we see no reason to otherwise accord them less process than any other plaintiff.

We do think the court was within its discretion to strike from the final amended complaint those claims that Drake had never pleaded with sufficient specificity to begin with. As discussed above, we agree that defendants were significantly prejudiced by the delay in those claims because they were not given adequate notice of what those claims were. But we cannot uphold the district court's decision to dismiss the entire complaint.

## CONCLUSION

In its August 24, 2000 and July 25, 2001 rulings, the district court held that Counts 1 and 2 stated viable claims to the extent that they relied on Norden's progress bills and certificates of indirect cost rates and dealt with charges for property tax and the depreciation costs of assets that did not exist, had been sold off, or were unrelated to government contracts. Drake has already adequately pleaded those claims and he should have been allowed to proceed with them. We therefore reverse the district court's decision in part, and remand so that plaintiff can do so. However, we affirm the district court's order insofar as it struck from Drake's final amended complaint those claims that he had never pleaded with sufficient specificity. We remand with instructions to the district court that it proceed in conformity with this opinion.

Affirmed in part, reversed in part, and remanded.