**C.J. SCOTT, Plaintiff–Appellant,**

v.

**Lieutenant PERKINS, J. Stone, M. Buehler, Correctional Officer; R. Shaw, Correctional Officer; W. Dibiase, F. Duluke, Correctional Officer; J. Stinson, Superintendent; J. Rando, Defendants–Appellees.**

**Docket No. 04–5691–PR.**

United States Court of Appeals, Second Circuit.

Sept. 21, 2005.

Mitch Kessler, Cohoes, N.Y, for Plaintiff–Appellant.

Jennifer Grace Miller, Assistant Solicitor General, New York State, Elliot Spitzer, Attorney General of the State of New York, on the brief; Nancy A. Spiegel, Senior Assistant Solicitor General, New York, N.Y, for Defendant–Appellees.

Present: NEWMAN, CALABRESI, and STRAUB, Circuit Judges.

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY OR-DERED, ADJUDGED, AND DECREED that the judgment of the District Court is hereby **VACATED** and **REMANDED.**

Plaintiff–Appellant C.J. Scott, formerly an inmate in the custody of the New York State Department of Corrections, appeals from a judgment entered by United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) dismissing his civil rights action under 42 U.S.C. § 1983 with prejudice pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute after Scott failed to appear in court on the day trial was scheduled to begin. On appeal, Scott argues that the District Court committed clear error by not granting an adjournment of the trial date because his financial difficulties upon his release from prison prevented him from making the trip to Albany. For the following reasons, we agree and vacate the judgment below. The case shall be remanded for trial and reassigned to another district judge.

### I.

At the time of the incidents that are the subject of this case, Scott was imprisoned at the Great Meadow Correctional Facility in Comstock, New York serving a lengthy term after two convictions for assault in the first degree. On September 26, 1994, he filed a *pro se* civil rights action under 42 U.S.C. § 1983 in the United States District Court for the Northern District of New York against the Commissioner of the New York State Department of Correctional Services and a number of corrections officers complaining of disciplinary action taken against him.

A complete description of Scott's claims may be found in *Scott v. Coughlin,* 344 F.3d 282, 284 (2d Cir.2003) (*"Scott I"*). Scott filed two amended complaints. The second amended complaint was filed on February 5, 1996 alleging, *inter alia,* that Correction Officers Frank DeLuke and

James Rando—the only defendants remaining in this action—violated his civil rights, and when he complained to prison authorities, they retaliated by filing false disciplinary charges against him. The complaint further alleges that in taking disciplinary action the defendants used excessive force in violation of the Eighth Amendment.

On November 3, 1999, the District Court granted summary judgment to the defendants. The parties agreed that the appeal would be filed after the resolution of Scott's motion to set aside or vacate the judgment, filed on May 15, 2000. The District Court decided that motion on March 20, 2002. Scott appealed and we vacated the judgment and remanded the case for trial.

The District Court set a trial date for September 28, 2004. On August 5, 2004, Scott was released on parole from prison. After his release, he stayed at a shelter in Brooklyn, before taking up residence in the South Ozone Park section of Queens, New York. Prior to trial, he notified the District Court of his change of address.

On September 27, 2004, Scott's counsel wrote to the District Court and requested that the trial be adjourned "at least one month" because Scott was in the process of applying for public assistance and lacked sufficient funds to travel to Albany for the trial. The next day when Scott failed to appear for trial, the District Judge noted that the case had been pending for "10 years, and it's been adjourned on many occasions, and not because of any one party, just happened that way." At the District Judge's suggestion, defendants made an oral motion to deny the adjournment request and to dismiss the case with prejudice for failure to prosecute. The District Court granted the defendants' motion, stating the following:

Well, this case was scheduled for today, it's been on the court calendar for 10 years, the plaintiff knows that it's on [for] today, the plaintiff could easily get up here. The plaintiff knows the case was not adjourned, it was not going to be adjourned. In fact, the Court has bent over backwards to help this plaintiff by having the trial here over Syracuse. The Court exercised its discretion and appointed an attorney to represent him so he wouldn't be pro se at the trial. The Court is going to grant defendants' motion and the case is dismissed with prejudice ... as against all defendants.

The case was dismissed with prejudice and judgment was entered in favor of the defendants.

II.

We review dismissals for failure to prosecute under an abuse of discretion standard. *See Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir.1993). A district court abuses its discretion if its decision was based on an error of law or a clearly erroneous finding of fact. *Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir.2004). We examine the District Court's decision by examining whether: (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions. *United States ex rel. Drake v. Norden Sys. Inc.*, 375 F.3d 248, 254 (2d Cir.2004). Moreover, while district courts are not required to discuss these factors on the record, "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning." *Lucas v.*

*Miles*, 84 F.3d 532, 535 (2d Cir.1996). We have repeatedly emphasized that "dismissal is a harsh remedy to be utilized only in extreme situations." *Minnette*, 997 F.2d at 1027 (internal quotation marks omitted).

■ Whether the first factor weighs against a plaintiff has two separate aspects: "(1) that the failures were those of the plaintiff, and (2) that these failures were of significant duration." *Spencer v. Doe*, 139 F.3d 107, 113 (2d Cir.1998). Scott was responsible for any delay resulting from his failure to appear at trial. This delay of one month cannot be correctly described as unreasonable, considering that the case had been pending for more than ten years. *See LeSane v. Hall's Security Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir.2001) (holding a "barely a month old" delay in responding to a summary judgment motion did not weigh in favor of dismissal); *Lucas*, 84 F.3d at 535 (vacating dismissal where the *pro se* plaintiff filed his supplemental complaint 39 days later than the deadline ordered by the district court). Furthermore, there was no indication that Scott had abandoned the matter. He had kept in contact with both the court, by submitting his new address, and his counsel. Although non-appearance on the day set for trial can cause more significant prejudice than pretrial delay in submitting a document, the inconvenience to the District Court could have been mitigated by proceeding to select a jury.

More generally, Scott was not solely responsible for the delays that caused the case to take ten years to get to trial. The District Court itself stated that neither party in particular was responsible for the delay. Given the difficulties of reentering society after a long incarceration, it is not unreasonable that Scott would have trouble obtaining even the amount of money necessary for a bus ticket and motel room. This factor weighs against dismissal.

The second factor weighs neither against, nor for dismissal. There was no notice to Scott that his failure to appear could result in a dismissal. Scott, however, is not *pro se* and has court appointed counsel, who should have (and possibly did) inform him that failure to appear for trial could result in the dismissal of his case. We also note that Scott's counsel did not suggest to the court that a jury be selected without Scott, who as a private litigant had no obligation to appear at trial until called to testify.

The third factor—the prejudice to the defendants—weighs against dismissal. Defendants claimed that the "effort and expense of [the defendants] and the State of New York in transporting the defendants and witnesses to and from the court for trial" constituted prejudice. Defendants claim that prejudice may also be presumed because of the "lengthy and inexcusable" delay. *See Drake*, 375 F.3d at 256. Where the delay is "more moderate or excusable, the need to show actual prejudice is proportionally greater." *Id.* As stated above, a delay of a month would not have been a lengthy delay given the ten-year history of the case, and considering Scott's financial difficulties, the delay was excusable. Defendants have not made a sufficient showing of actual prejudice. The cost of transporting witnesses to court and preparing for trial are necessary costs for every litigation and will be, to some extent, increased whenever there is a last-minute adjournment. Moreover, defendants conceded at oral argument that their witnesses were not present on the first day of trial. Defendants' trial preparation would not have been wasted as the trial would have commenced within a reasonable amount of time. There was no showing that evidence was likely to be lost or that their ability to put on their case would have been impaired. *See Romandette v.*

*Weetabix Co.,* 807 F.2d 309, 312 (2d Cir. 1986) (finding no prejudice as a result of *pro se* litigant's inaction where there was "no indication that evidence [wa]s likely to be lost, or that discovery ha[d] been made more difficult"). Moreover, defendants received plaintiff's counsel's letter the day prior to trial that Scott was requesting an adjournment of the trial date. The prejudice to the defendant was minimal and not sufficient to overcome the relatively short delay requested.

Considering the fourth factor, the District Court did not engage on the record in any balancing of Scott's right against the need to alleviate the court's calendar congestion. A court must balance the need to alleviate court congestion against the plaintiff's right to due process. *Romandette,* 807 F.2d at 312. However, "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas,* 84 F.3d at 535–36. There was no evidence of the court's calendar congestion sufficient to deprive Scott of his day in court. Moreover, there was no indication that Scott was a vexatious or burdensome litigant, which might have forewarned of a long and tedious trial. *See LeSane,* 239 F.3d at 210. This factor weighs against dismissal.

Finally, the court did not consider any lesser sanction. Unlike in cases where the attorney's "contemptuous and disrespectful behavior" justified harsh sanctions, *Peart v. City of New York,* 992 F.2d 458, 463 (2d Cir.1993), there has been no showing that Scott has been disrespectful, vexatious, or otherwise worthy of a harsh sanction. An adjournment coupled with a warning that the case would be dismissed if Scott failed to appear would have been sufficient. The difficulties in reentering the community and obtaining public assistance or gainful employment after a long period of incar-ceration certainly weigh in favor of a lesser sanction for Scott. Another option open to the District Court was to select a jury and set a date later in the week for Scott to appear.

## III.

■ We conclude that this case is one of the few instances where unusual circumstances require an order of reassignment out of concern for the appearance of justice. *See Mackler Prods., Inc. v. Cohen,* 225 F.3d 136, 146–47 (2d Cir.2000). In determining that reassignment is appropriate we have weighed the following factors:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 147.

Although we know that the District Judge would be able to "put[ ] out of his mind" any disagreements he might have with our decisions here and in *Scott I,* we conclude that reassignment is appropriate in this case to "preserve the appearance of justice." *Id.* Given the nature of the issues remaining in the trial, we have no doubt that the assignment of a new judge will not create disproportionate waste or duplication of effort. *Id.* We stress that "our remand does not imply any personal criticism of the [district] judge." *Id.* (citing *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977)).

## IV.

For the foregoing reasons, the judgment of the District Court is hereby **VACATED** and the case is **REMANDED** for trial by a different district judge.