BERMAN, District Judge,
dissenting:
I respectfully dissent because I believe that the district court improperly denied *584 Lewis his day in court. See Truax v. Corrigan, 257 U.S. 312, 332, 42 S.Ct. 124, 66 L.Ed. 254 (1921) (“[t]he due process clause requires that every man shall have the protection of his day in court”); Sokol Holdings, Inc. v. BMB Munai Inc, 542 F.3d 354, 358 (2d Cir.2008) (“It is a fundamental principle of American law that every person is entitled to his or her day in court.”) (quoting Tice v. Am. Airlines, Inc., 162 F.3d 966, 968 (7th Cir.1998)); see also Holt v. Pitts, 619 F.2d 558, 561-62 (6th Cir.1980) (“[W]hen an inmate’s civil action reaches the trial stage, and his claim proves sufficiently meritorious to survive motions for dismissal and summary judgment, a court must then take all reasonable steps necessary to insure that the inmate receives the fair ‘day in court’ to which he is entitled.”).[1]
Lewis alleges in this civil action for damages that he was physically and sexually assaulted by a number of New York State Department of Corrections officers upon arriving at Great Meadow Correctional Facility (“Great Meadow”) on or about May 30, 1990, and while wearing “body restraints.” (Am. Compl., dated June 1, 1992.) The case was filed on June 10,1991 and finally brought to trial on June 21, 2005, i.e., over fourteen years after it was commenced.[2]
As the majority indicates, at approximately 10:00 a.m. on the first day of trial, Lewis’s counsel advised Lewis that during the trial he would be housed at Great Meadow, “the facility where the alleged assaults had occurred and where certain of the defendants were still employed.” Majority Op. at 572; see Appellant’s Supp. Br., dated Aug. 6, 2008, at 1. By 11:48 a.m., Lewis had raised with the district court through counsel his concern “about testifying particularly against the defendants who are now assigned to Great Meadow[J” (Trial Tr. at 13.) By 12:12 p.m., Lewis’s case was dismissed with prejudice. (Id. at 17.)[3]
Upon hearing Lewis’s concerns on the morning of June 21, 2005, the Assistant State Attorney General defending the case stated that he could “try[] to arrange a new facility” at which Lewis could be housed during trial but also noted that he could not “do that at the moment.” (Trial Tr. at 14.)[4] Shortly after 12:00 p.m., the *585 district court stated that it could “understand [Lewis’s] discomfort,” and, upon confirming that certain of the defendants were in fact still assigned to Great Meadow, the district court (not Lewis) sua sponte raised the option of adjournment. (Id. at 15.)[5] “[T]he other choice [is] to adjourn this trial for about a few weeks or a month” and “the case can be tried in Syracuse for a few days,” which would have allowed Lewis to avoid being housed at Great Meadow during his trial. (Id.)
At approximately 12:10 p.m., Lewis’s trial counsel stated to the district court that Lewis “fears for his life if he’s ever brought back to [Great Meadow]” and that Lewis’s “preference would be to have this trial adjourned and then rescheduled to be tried out in Syracuse.” (Id. at 16.) Lewis’s counsel made clear that Lewis was “not ... agreeing to ... a dismissal, and he’s not requesting that.” (Id. at 17.)
In dismissing Lewis’s case with prejudice shortly before 12:12 p.m., the district court appears not to have conducted any hearing, for example, regarding Lewis’s claim of possible reprisals. The rationale offered for the district court’s decision appears to be that “the plaintiff has no right to select the facility he’s going to stay at during the two or three-day trial” and “[tjhere’s a presumption that any facility he’s staying at, he’s going to be treated properly and lawfully.” (Id. at 14, 15.)
Unlike the majority, I believe that in reviewing the district court’s decision to dismiss this case with prejudice, we should apply the factors set forth in United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir.2004). See id. (“[W]e review the trial court’s decision [to dismiss for failure to prosecute] by examining whether: (1) the plaintiffs failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiffs right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.”). The conclusion I draw easily from such analysis is that this is “not one of those rare occasions when the drastic remedy of dismissal was warranted.” Colon v. Mack, 56 F.3d 5, 7 (2d Cir.1995) (internal quotations and citations omitted).
First, it is clear that, but for the fact that he learned on the morning of trial that he would be housed at Great Meadow, Lewis was prepared to testify at trial. See Peterson v. Term Taxi, Inc., 429 F.2d 888, 890-91 (2d Cir.1970) (per curiam). A relatively brief postponement of the trial (at most “a few weeks or a month,” as suggested sua sponte by the court below) would have been an inconsequential delay in the fourteen-year history of this case. See LeSane v. Hall’s Sec. Analyst, Inc., 239 F.3d 206, 210 (2d Cir.2001); Lucas v. Miles, 84 F.3d 532, 535 (2d Cir.1996); see also Francis v. Morganthau, No. 97 Civ. 5348, 1998 WL 226186, at *2 (S.D.N.Y. May 4,1998).
Second, Lewis’s case was dismissed without any clear advance warning, i.e., unless one concludes that less than 12 minutes notice on the first day of trial is sufficient. Shortly after 12:00 p.m., the district court stated, “If there’s no other solution, I would dismiss the case and certainly preserve [Lewis’s] right to appeal.” (Trial Tr. at 15); see LeSane, 239 F.3d at 210. That is what occurred approximately 12 minutes later. (See Trial Tr. at 17.) *586 But, in fact, it was not until the district court actually dismissed the case shortly before 12:12 p.m. that it notified Lewis that dismissal would be “with prejudice.” (Id. (“Okay. The Court is going to grant [defendants’] motion and dismiss the ease, with prejudice.”).)[6]
Third, any inconvenience to the defendants and/or costs incurred by the State of New York in postponing the trial would have been insignificant and not “specially burdensome,” LeSane, 239 F.3d at 210, particularly compared to the harm to Lewis in being barred from presenting his case, see Webber v. Eye Corp., 721 F.2d 1067, 1071 (7th Cir.1983) (per curiam). “[I]n cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater[.]” Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir.1982); see also Romandette, 807 F.2d at 312.
Fourth, the trial in this case was scheduled to last no more than three days. Absent any “evidence of an extreme effect on court congestion,” Lewis’s right to be heard should not have been “subrogated to the convenience of the court.” Lucas, 84 F.3d at 535-36; see Coats v. Dep’t of Veteran Affairs, 268 Fed.Appx. 125, 127 (2d Cir.2008); see also Freed v. Braniff Airways, Inc., 119 F.R.D. 10, 11 (S.D.N.Y.1987). The district court, as noted, acknowledged sua sponte that it could “understand [Lewis’s] discomfort,” and that it could “adjourn this trial for about a few weeks or a month” and “the case can be tried in Syracuse for a few days.” (Trial Tr. at 15.) In these circumstances, Lewis’s concerns “cannot be dismissed out of hand” as subjective or unreasonable. Colon, 56 F.3d at 7; see also Merker v. Rice, 649 F.2d 171, 174-75 (2d Cir.1981).
Fifth, the district court did not explain why it abandoned the alternatives of adjourning the trial for “about a few weeks or a month,” or moving the proceedings to Syracuse, or having the Assistant State Attorney General further explore alternative housing. (Trial Tr. at 14-15); see Martens v. Thomann, 273 F.3d 159, 182 (2d Cir.2001); Spencer v. Doe, 139 F.3d 107, 113 (2d Cir.1998); Colon, 56 F.3d at 7. Nor does the record reveal why the district court failed to consider other practical alternatives to dismissal, e.g., “that Lewis’s evidence might be offered in a form other than live testimony.” (Majority Op. at 582-83); see Muhammad v. Warden, Baltimore City Jail, 849 F.2d 107, 113 (4th Cir.1988); see also Sokol Holdings, 542 F.3d at 358; Holt, 619 F.2d at 561-62; Hernandez v. Whiting, 881 F.2d 768, 771 (9th Cir.1989).
Rather than relying upon Drake, the majority appears to create a new standard of analysis for this case: “The challenged judgment of dismissal for failure to prosecute pursuant to Fed.R.Civ.P. 41(b), entered after the jury was sworn, is properly reviewed by considering (a) the district court’s failure to grant an adjournment and transfer of the case; and (b) the district court’s decision to dismiss the case with prejudice when plaintiff, upon failing to secure the requested adjournment and transfer, refused to testify at trial.” (Majority Op. at 583.) I believe that this is an unnecessary “reach” and that this case is purely and simply about a dismissal because Lewis refused to testify at trial out of fear of reprisals. The Drake factors serve as “guiding rules that limit a trial court’s discretion in this context out of recognition ... that dismissal for failure to prosecute is a harsh remedy to be utilized *587 only in extreme situations.” Drake, 375 F.3d at 254 (internal quotations and citation omitted). If, as the majority posits, “a district court may dismiss a case under Rule 41(b) when the plaintiff refuses to go forward with a properly scheduled trial,” (Majority Op. at 580 (citation omitted)), there is every reason that the Drake factors should be considered. See Scott v. Perkins, 150 Fed.Appx. 30 (2d Cir.2005).[7]
For the foregoing reasons, I respectfully dissent.

. The majority’s references to Lewis's past criminal behavior are, most respectfully, largely irrelevant to this analysis. (See Majority Op. at 571-72 & n. 2, 573, 578, 579 & n. 11); see also Saperstein v. Palestinian Auth., No. 04 Civ. 20225, 2008 WL 4467535, at *16 (S.D.Fla. Sept.29, 2008) (“Our system is respected because all litigants, even unpopular ones, have the right to their day in court and all litigants are entitled to equal justice under our laws without sympathy or prejudice for either side.”).

. The docket reflects that from the time the case was filed in 1991 through June 21, 2005, Lewis actively prosecuted his claims, including discovery and summary judgment proceedings. See Alvarez v. Simmons Mkt. Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir.1988); Romandette v. Weetabix Co., 807 F.2d 309, 312 (2d Cir.1986). On at least three occasions, Lewis applied to the district court for a trial date. (A 16. Nos. 110, 111; A. 28 No. 165.)

. As the majority notes, ”[i]n his supplemental submission to this court, Lewis asserts that [trial counsel] informed the district court 'before jury selection that the plaintiff was in fear of his life from the defendants ... and would not allow himself to be transferred back to Great Meadow without a court order of protection.’ ” (Majority Op. at 573 n. 5 (quoting Appellant's Supp. Br. at 1).)

. The Assistant State Attorney General also suggested that Lewis be placed in the Special Housing Unit ("SHU”) at Great Meadow during trial, presumably so that cameras could monitor Lewis and his jailers twenty-four hours a day. Lewis declined stating that SHU "was where some of the incidents [in question] ... took place.” (Id. at 17.)

. THE COURT: “[A]re there particular defendants here who are still assigned to that facility [Great Meadow]?” MR. SCHWARTZ: “Yes, your Honor. ” (Id.)

. When the district court raised the possibility of briefly adjourning the trial, the Assistant State Attorney General stated, "it's Mr. Lewis's option if he wishes not to testify and proceed with trial, I would submit that the case be dismissed.” (Id. at 15.)

. The decision by summary order in Scott is cited solely to identify a case with similar facts in which this Court applied the Drake factors. The Scott decision is not cited as precedent. See Local Rules of the Second Circuit Relating to the Organization of the Court § 32.1; see also, e.g., Franceskin v. Credit Suisse, 214 F.3d 253, 256 n. 1 (2d Cir.2000) ("Here and elsewhere in this opinion, we cite to cases decided by summary order solely to identify instances in which diversity jurisdiction was improperly alleged in matters coming before this court. We cite them only as facts rather than as precedents.”).