08-4202-cv, 08-4204-cv, 08-4207-cv, 08-4209-cv
Brown, et al. v. General Nutrition Co., et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)." A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/). IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.**

      **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 14ᵗʰ day of December, two thousand nine.**

PRESENT:
        WILFRED FEINBERG,
        DEBRA ANN LIVINGSTON,
            *Circuit Judges*,
        JOHN G. KOELTL
            *District Judge.*[*]

_____

Shawn Brown, Ozan Cirak, Luke Smith, Thomas Hannon, each individually and on behalf of all others similarly situated, Harry Rodriguez, individually and on behalf of all others similarly situated, Andrew Toth, individually and on behalf of all others similarly situated, Richard Zatta, individually and on behalf of all others similarly situated, Everett Abrams individually and on behalf of all others similarly situated,

_____*Plaintiffs-Appellant*s,

      v.                              08-4202-cv, 08-4204-cv, 08-4207-cv, 08-4209-cv

---

[*]The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

General Nutrition Companies, Inc., Bodyonics, Ltd., d/b/a Pinnacle, Muscletech Research and Development, Inc., AST Sport Science, Inc., Cytodyne Technologies, Inc., Twin Laboratories, Inc., Vitamin Shoppe Industries, Inc.,

*Defendants-Appellee*s.

_____

FOR APPELLANT:        JOHN D. GOLDSMITH, KATIE BRINSON HINTON, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A.; CRAIG S. HILLARD, Stark & Stark

FOR APPELLEES:        GORDON SCHMIDT, KEVIN BATIK, McGuire Woods LLP

Appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **VACATED** and the case **REMANDED** to the district court for further proceedings consistent with this opinion.

Plaintiff-Appellant Shawn Brown, the lead plaintiff in four consolidated cases against Defendant-Appellee General Nutrition Co. ("GNC"), appeals from a July 29, 2008 order of the district court dismissing the four cases with prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b). Based on the record before us, the five factors used in this Circuit to review a district court's dismissal for failure to prosecute do not militate in favor of such a dismissal and require us to vacate the order here. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

*I.      Background*

In 2002, the various plaintiffs filed class actions against GNC in state courts in Florida, New York, New Jersey, and Pennsylvania. These cases alleged consumer fraud and unjust enrichment

against GNC related to GNC's sale of products containing certain steroid hormones. In January 2006, one of the manufacturers of the steroid products, MuscleTech, filed for bankruptcy in the Southern District of New York. Thereafter, GNC filed notices of removal to federal court in each of the state court actions on the basis that, under 28 U.S.C. § 1334(b), the cases were "related to" the pending bankruptcy case. In May 2006, the plaintiffs filed motions to remand the case back to the state courts, and GNC filed motions to transfer all of the cases from their respective district courts to the Southern District of New York. The plaintiffs' motions were denied, GNC's were granted, and the cases were transferred to the Southern District of New York.

The four cases were assigned in 2006 and 2007 to the Southern District of New York as part of pending multidistrict litigation proceedings ("MDL proceedings") regarding personal injury arising from the use of ephedra. James Niss serves as a Special Master in these proceedings.

Several Case Management Orders ("CMO") set forth the rules for motions practice in the MDL proceedings. CMO No. 1 sets forth procedures and times for the serving and filing of papers. CMO No. 3 ¶ 8 explains that, because of the large number of pending and prospective motions in the multidistrict litigation, "the Court has asked the Special Master to review and summarize motion papers before they are considered by the Court. Accordingly, on the day when the briefing of any motion is completed, the moving party is directed to e-mail the Special Master a complete set of the motion papers of all parties."

Most relevant here, CMO No. 10 ¶ 5 instructs "[a]fter serving and filing papers within the times provided in Case Management Order No. 1, the moving party must deliver courtesy copies to Chambers and send in PDF format a complete set of papers, including answering papers, to the Special Master; the motion will then be heard at the next status conference not less than one week

after the courtesy copies have been delivered." CMO No. 10 ¶ 5 also instructs the moving party to, within one business day of filing, "send all other parties who have appeared a list of each moving paper to be considered by the Court." Finally, CMO No. 10 ¶ 5 warns parties that "[n]o papers will be considered by the Court unless they are listed as specified" in the CMO.

In August and September 2007, GNC and Brown engaged in an email exchange with Niss in which plaintiffs inquired about filing a remand motion addressing the district court's subject matter jurisdiction. On September 28, 2007, the parties entered into a Joint Stipulation of Dismissal with Prejudice, which dismissed the plaintiffs' claims against GNC that related to GNC's sale of MuscleTech products. On October 9, 2007, Niss emailed the parties a briefing schedule for plaintiffs' anticipated remand motions in all four of the cases pending in the MDL proceedings. The email provided, in relevant part, as follows:

> In light of [plaintiffs'] e-mail copied below, I hereby set the briefing schedule for plaintiffs' remand motions in all four cases pending in the Ephedra MDL as follows:
>
> October 29   Last day for plaintiffs to file moving papers
> November 21 Last day for defendants to file answering papers
> November 29 Last day for plaintiffs to file a reply, if any, and to comply with the moving party's obligations under CMO#1 §§ IV & VIII.C, CMO#3 ¶8 & CMO#10 ¶5.
> December 6   Oral argument
>
> The Court will not consider substantive motions unless and until it denies the remand motion. All parties should read and follow the CMO provisions I've cited. For your convenience, I've attached copies.
>
> Plaintiffs filed remand motions on October 29, 2007, and GNC filed briefs in opposition.

On November 28, 2007, plaintiffs emailed Niss to make a joint request for an extension of time for plaintiffs to file their reply brief, indicating that the parties were "in the process of attempting to schedule a mediation in mid-December or January." Niss granted an extension of "the time

for filing plaintiffs' reply and delivering the courtesy copies to January 31, 2008." Plaintiffs never filed a reply brief, nor did they furnish a list of the papers to be submitted to the court or provide a set of papers to Niss or to the district court as required by CMO No. 10, which was both referenced in Niss's email of October 9, 2007 and attached to it. As a result of the failure to submit papers to Niss and to the district court, the remand motions submitted by the plaintiffs were never placed on the agenda for any status conference and were never presented to the district court for consideration.

On June 4, 2008, the district court issued a Notice of Motion to Dismiss 23 cases, including the four at issue here, with prejudice for "fail[ure] to prosecute . . . as required by this Court's case management orders." The Notice of Motion to Dismiss indicated that the court was instituting this action "on its own motion" and requested that papers in opposition to the motion be submitted by July 7, 2009. Plaintiffs filed an untimely response on July 9, 2008. On July 14, 2008, the parties appeared before the district court judge, who issued an oral opinion indicating that he had considered sanctions and other alternative penalties, but decided against them because "plaintiffs' counsel not only violated the orders of this Court repeatedly and egregiously, but did so because plaintiffs' counsel really had abandoned any desire to move these court cases forward, except to the extent he could try to extort through mediation some nuisance value of settlement." On July 27, 2008, the district court issued an order dismissing the Plaintiffs' cases for "failure to prosecute them as required by briefing schedules set by the Court and the applicable case management orders." Plaintiffs timely appealed, and the cases were consolidated on this appeal by stipulation of the parties and order of this Court.

## II.   *Analysis*

We review a district court's dismissal of a case for failure to prosecute for abuse of discretion. *Ruzsa v. Rubenstein & Sendy Attys at Law*, 520 F.3d 176, 177 (2d Cir. 2008); *Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004). We review the district court's decision by employing a five-factor analysis:

> [whether] (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*Ruzsa*, 520 F.3d at 177 (quoting *U.S. ex rel Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)). None of the five factors is dispositive, and we review the dismissal in light of the record as a whole. *Drake*, 375 F.3d at 254.

Although we recognize the difficulties that district courts face in managing their dockets, especially in the context of multidistrict litigation, the five-factor test does not permit us to conclude that dismissal with prejudice here was permissible.[1]

With regard to the first factor, we ask (a) whether the delay can be attributed to the

---

[1] We note that plaintiffs briefly argue on appeal that the district court did not have jurisdiction over this case and therefore could not dismiss it with prejudice. Because plaintiffs' jurisdictional argument is statutory and not constitutional, we may exercise hypothetical jurisdiction and decide the merits of the Rule 41(b) question without addressing the jurisdictional question, which we leave to the district court in the first instance. *Ajlani v. Chertoff*, 545 F.3d 229, 237 (2d Cir. 2008); *Amimbola v. Ashcroft*, 378 F.3d 173, 180 (2d Cir. 2004). We add, however, that we regard with skepticism the plaintiffs' argument that once the parties stipulated to dismiss claims against GNC relating to GNC's sale of MuscleTech products, the district court no longer had subject matter jurisdiction because this case was no longer "related to" a bankruptcy proceeding. Generally, the existence of federal jurisdiction depends on the facts as they exist when the action is commenced. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 100 (2d Cir. 1999). As stated, however, we leave the jurisdictional question to the district court to decide in the first instance. Similarly, we leave plaintiffs' statutory abstention argument for the district court.

plaintiffs, and (b) whether the delay was of significant duration. *Drake*, 375 F.3d at 255. The delay here was occasioned when the plaintiffs failed to file a PDF version of their papers with the Special Master and a courtesy copy with the district court and to notify both that briefing was complete, as required by CMO No. 10. The delay can be calculated to be from January 31, 2008, when plaintiffs' reply was due, through June 4, 2008, when the district court introduced the motion to dismiss. This Circuit has noted that delay of a "matter of months" may warrant dismissal, *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982), so plaintiffs' four-month delay cannot be said to be of insignificant duration for this analysis.

However, with regard to factor two, plaintiffs were not given notice that further delay would result in dismissal. This factor requires us to examine whether there was notice that dismissal would result if there was "*further* delay." *Drake*, 375 F.3d at 255. The district court stated at the hearing on July 18, 2008 that plaintiffs' counsel had violated the court's orders "repeatedly and egregiously." The court, however, provided no information as to specific instances of such violations of court orders, nor did it specify what, if any, warnings had previously issued, or suggest what the plaintiffs could do to avoid dismissal. *See id.* (finding that lack of notice cut against dismissal when trial court gave plaintiff little opportunity to save case after notice of dismissal). Based on the record before us, the first notice that plaintiffs received that their case was in danger of being dismissed was when the district court issued the June 4, 2008 motion to dismiss for failure to prosecute. This did not suffice to put plaintiffs on notice that *future* inattention to the litigation and failure promptly to comply with court orders would result in dismissal, and it did not provide them with the opportunity to cure any previous deficiency.

GNC argues that, with regard to factor three, whether it was prejudiced by the delay, the district court's finding that it "put off allowing [GNC] to file for summary judgment" was sufficient prejudice. Although we have found that "prejudice to defendants resulting from unreasonable delay may be presumed," there are no indications that the delay here, for example, "increased the litigation costs defendants had to bear or reduced (perhaps due to decaying evidence) their likelihood of success on the merits." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir. 2001). Thus, we find that if there was prejudice to GNC, it was minimal.

In assessing the fourth factor, we take into consideration the type of delay perpetrated by the plaintiffs. When the delay was "silent and unobtrusive rather than vexatious and burdensome," meaning the plaintiff simply "did not make submissions required by the court" instead of "swamp[ing] the court with irrelevant or obstructionist filings," this factor tends to favor the plaintiff. *Id.* Indeed, "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). Although we are sympathetic to the fact that the district courts must have discretion to manage their dockets, particularly in the context of multidistrict litigation, here there is no evidence that the plaintiffs abusively contributed to calendar congestion.

Finally, the district court expressly noted that it "considered other alternatives" to dismissing the case, but ultimately decided upon dismissal because "plaintiffs' counsel really had abandoned any desire to move these court cases forward." Without the benefit of knowing what sanctions were considered and rejected, however, it is difficult for us to review this decision under an abuse of discretion standard. *See Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir.

2001) (noting that "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning").

In sum, we find that a review of the five factors requires us to vacate the district court's decision to dismiss the plaintiffs' case with prejudice for failure to prosecute under Rule 41(b). Such a ruling may be justified in the future in the event plaintiffs' counsel's failure to prosecute imposes further delay in connection with this litigation. The present record, however, considered as a whole, does not provide an adequate basis to uphold the district court's judgment.

For the foregoing reasons, the judgment of the district court is hereby **VACATED** and **REMANDED** for proceedings consistent with this opinion.[2]

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

By:_____

---

[2] Plaintiffs have additionally requested in their brief that because of statements Judge Rakoff made questioning the merits of plaintiffs' case that, upon remand, their case be assigned to a different district judge. We find no basis for plaintiffs' request. *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *see also United States v. Johnson*, 567 F.3d 40, 54 (2d Cir. 2009) (rejecting defendant's request for new judge on remand); *Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 245 (2d Cir. 2006) (same).