KENSINGTON INTERNATIONAL LIMITED, Plaintiff–Appellee,

v.

REPUBLIC OF CONGO, Defendant–Appellant.

Docket No. 05–1988–cv.

United States Court of Appeals, Second Circuit.

Argued: Dec. 21, 2005.

Decided: Aug. 25, 2006.

Boaz S. Morag (Vitali S. Rosenfeld on the brief), Cleary Gottlieb Steen & Hamil-ton LLP, New York, NY, for Defendant–Appellant.

Robert A. Cohen, Dechert LLP (Ross L. Hirsch, Dechert LLP, Kevin S. Reed, Quinn Emanuel Urquhart Oliver & Hedges, LLP, on the brief), New York, NY, for Plaintiff–Appellee.

Before MESKILL, WINTER, and SOTOMAYOR, Circuit Judges.

WINTER, Circuit Judge.

The Republic of Congo appeals from Judge Preska's order directing it to post security for the costs and expenses of plaintiff Kensington International Limited. The Congo argues that the order violates the Foreign Sovereign Immunities Act. 28 U.S.C. § 1602–1611 ("FSIA").

We dismiss the appeal because the order is not appealable under the collateral order doctrine. Construing the appeal as a petition for a writ of mandamus, we deny the petition.

## BACKGROUND

Kensington holds overdue Congolese debt. It sought payment on the debt in England, and, in 2002, an English court ordered the Congo to pay approximately $57 million plus interest.

Kensington then sought to have the English judgment recognized in the United States, and it filed a complaint against the Congo in New York state court. On the Congo's motion, the case was removed to the Southern District of New York. Kensington's complaint asserted five claims for relief. First, Kensington sought recognition of the English judgment. In the alternative, Kensington alleged, second, breach of the loan agreement and sought recovery of the unpaid principal and interest. Third, it sought injunctive relief based on the Congo's violation of the *pari passu* and negative pledge provisions in the loan agreement. Fourth, it requested a declaratory judgment that two particular

organizations are the alter ego of the Congo. Fifth, Kensington sought costs and expenses incurred in enforcing the Congo's obligations.

On September 30, 2004, Judge Preska granted summary judgment to Kensington on its claim for recognition of the English judgment. On March 18, 2005, Judge Preska granted Kensington's motion to require the Congo to post security for costs and attorneys' fees. The Congo had argued that it was protected from such an order by the FSIA, which establishes that the property of foreign states are immune from "attachment[,] arrest[,] and execution." 28 U.S.C. § 1609. Judge Preska concluded that in the loan agreement the Congo had explicitly waived any protection against prejudgment attachment under the FSIA. The Congo appeals.

## DISCUSSION

a) Appealability of the Order

The threshold issue is whether Judge Preska's order is appealable. We conclude that it is not.

■■■ "Orders denying or requiring security are obviously interlocutory, and questions regarding their appealability turn on the applicability of the so-called collateral order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)." *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 113 (2d Cir.1991). "[T]he collateral order doctrine accommodates a 'small class' of rulings, not concluding the litigation, but conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action.'" *Will v. Hallock*, —— U.S. ——, ——, 126 S.Ct. 952, 957, 163 L.Ed.2d 836 (2006) (quoting

*Behrens v. Pelletier*, 516 U.S. 299, 305, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)). To be among that "small class" of appealable interlocutory rulings appealable under the *Cohen* doctrine, an order must (i) "conclusively determine the disputed question"; (ii) "resolve an important issue completely separate from the merits of the action"; and (iii) "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (internal citations omitted).

■■ We have held that orders granting security are not appealable because they fail to satisfy the third prong of the collateral order doctrine test: The party ordered to post security may obtain complete relief on appeal from final judgment. *See Seguros Banvenez S.A. v. S/S Oliver Drescher*, 715 F.2d 54 (2d Cir.1983). In *Caribbean Trading*, we made clear that an order to post security is not appealable even where the subject party asserts immunity from prejudgment attachment under the FSIA. 948 F.2d at 115. In that case, a corporation owned by the government of Nigeria appealed from an order requiring it to post security, arguing that the order "was barred by Section 1609 of the FSIA." *Id.* at 113. We concluded that appellate jurisdiction did not exist. *Id.* at 113–15. We distinguished between claims of FSIA immunity *from suit* under Section 1604, denials of which are appealable collateral orders, and claims of FSIA immunity *from attachment*, denials of which are not appealable. *Id.* at 114–15. A denial of the claim of FSIA immunity from suit is immediately appealable because any "ultimate success [on appeal from a final judgment] would not redress the erroneous denial of an immunity from the trial itself."[1] *Id.* at 114. In contrast, denial of a

---

1. The Supreme Court has since held that even the avoidance of trial is not, by itself, sufficient to satisfy the "effectively unreviewable" prong of the collateral order test. "[I]t is not mere avoidance of a trial, but avoidance of a

claim of FSIA immunity from attachment would "not subject a foreign state to a proceeding that could be avoided by a successful appeal." *Id.* at 115. Thus, invocation of FSIA immunity from attachment is irrelevant to whether an order is appealable.

Since *Caribbean Trading, Banque Nordeurope, S.A. v. Banker,* 970 F.2d 1129 (2d Cir.1992) (per curiam), considered whether a district court's decision to dissolve an attachment was appealable as a collateral order. *Banque Nordeurope* noted that "[a]n impression has been generated in the federal courts that an order *denying* an attachment is appealable, but one *granting* an attachment is not." *Id.* at 1130. The court further noted that "that easy test has been repeated even recently in this court," *id.* (citing *Caribbean Trading,* 948 F.2d at 114), and acknowledged a separate "trend, both in our circuit and elsewhere, toward more flexibility in dealing with attempted appeals involving attachments." *Id.* at 1131 (citing 15A Charles Alan Wright, et al., *Federal Practice and Procedure* § 3914.2 (1992)). *Banque Nordeurope* offered the following supplement: "a critical factor in appealability is whether the appeal presents an important question of law whose resolution will guide courts in other cases, or whether it involves merely the application of well-settled principles of law to particular facts." *Id.*

After *Banque Nordeurope,* we took up this issue again in *Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.,* 56 F.3d 394 (2d Cir.1995). In *Result Shipping,* we applied *Banque Nordeurope* holding that appealability rests, in part, on the importance of the issue. *Id.* at 398. We

concluded that we did possess jurisdiction because, first, "the instant appeal present[ed] issues concerning the interplay of the Arbitration Act, on the one hand, and the Supplemental Rules governing the availability of security and countersecurity on the other ... [and] the resolution of these issues will provide necessary guidance to trial courts in this potentially recurring context," and, second, "the other requirements of the *Cohen* doctrine [were] clearly satisfied." *Id.* at 399. Thus, *Result Shipping* provides an explanation of what was meant by a more "flexible" approach: even if an order vacating, dissolving, or denying an attachment satisfies *Cohen,* courts have leeway to determine whether the issue on appeal is an important issue of law, the resolution of which may have relevance for future cases.

■ Thus, rulings are appealable as collateral orders when they (i) satisfy *Cohen* and (ii) present an important question of law. This is the only consistent reading of the cases because both *Banque Nordeurope* and *Result Shipping* involved orders that otherwise satisfied the *Cohen* doctrine. *Banque Nordeurope* was an appeal from a dissolution of a prejudgment attachment, 970 F.2d at 1130, and *Result Shipping* was an appeal from a denial of a motion for security, 56 F.3d at 398. Both rulings involved district court orders that could not "be redressed on appeal at the conclusion of the action," unlike an order to post security, which "generally cause[s] no irreparable loss in that parties posting security will be repaid with interest if they prevail." *Caribbean Trading,* 948 F.2d at 114.

trial *that would imperil a substantial public interest,* that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Hallock,* 126 S.Ct. at 959 (emphasis added); *accord South Carolina State Bd. of Dentistry v. FTC,* 455 F.3d 436, 2006 WL 1134136 at *5 (4th Cir. May 1,

2006) (applying *Hallock* to a case where petitioner appealed the FTC's rejection of its *Parker* immunity defense and concluding that the collateral order doctrine does not apply because no "particular value of a high order was marshaled in support of the interest in avoiding trial." (citation omitted)).

■ While *Banque Nordeurope* may have seemed skeptical of the "easy test" that orders denying security are appealable and orders granting security are not, it did not in any way erode the requirements of *Cohen*. Instead, it established an additional requirement for appealability above and beyond the standard *Cohen* test: importance. The holding of *Caribbean Trading* therefore stands unchanged: An order granting security is not appealable because the aggrieved party may obtain complete relief on appeal from final judgment. This appeal falls squarely within the holding of *Caribbean Trading*.

The Congo argues that *Caribbean Trading* is distinguishable because Judge Preska's order here would require the Congo to bring immune assets into the jurisdiction, thereby vitiating the immunity of those assets and making them attachable under the FSIA. This harm, it argues, would be irreparable and effectively unreviewable.

■ We are not persuaded. There is no unreviewable harm here because Judge Preska's order does not have the breadth the Congo attributes to it. Her order requires the Congo to "either 1) pay into the Court ... the amount of $450,000, or 2) post a bond in a form acceptable to plaintiff's counsel in the amount of $450,000 as security for the costs, including attorneys' fees, that Kensington has incurred and likely will incur in obtaining judgment in this action." The Congo suggests that it has been "ordered to transfer into the jurisdiction $450,000 from its treasury," but Judge Preska's order requires no such thing. It requires only that the Congo produce $450,000 in security. *United States v. Jaffe*, 417 F.3d 259, 266 (2d Cir.2005) (stating that a restitution order in an amount which would compel the defendant to sell his home was not beyond the district court's authority, as the restitution order did not require payment from any specific asset). It simply places the burden upon the Congo to put up assets as security or come forward with some reason for noncompliance. The Congo's reason may be that it has no assets in the United States used for commercial purposes, and Judge Preska may be satisfied with that answer and not sanction the Congo. On its face, therefore, the order does not purport to reach beyond the FSIA limitations. Moreover, Kensington's brief and representations at oral argument make clear that it does not and will not advance such an interpretation.

There is thus no harm unreviewable on appeal from final judgment sufficient to distinguish this case from *Caribbean Trading*. We therefore dismiss the Congo's appeal for lack of jurisdiction.

b) Construing appeal as a petition for a writ of mandamus

■ We may treat appeals dismissed for lack of jurisdiction as petitions for a writ of mandamus. *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir.1992); *Caribbean Trading*, 948 F.2d at 115. In doing so, we generally must give the district judge notice and an opportunity to respond. Fed. R.App. P. 21(b). However, notice is unnecessary here because the inappropriateness of mandamus relief is clear on the face of the record. The "touchstones" for an exercise of the mandamus power are a showing of "usurpation of power, clear abuse of discretion and the presence of an issue of first impression," *see In re von Bulow*, 828 F.2d 94, 97 (2d Cir.1987) (internal quotation marks and citation omitted), and the Congo falls woefully short of meeting that standard.

The Congo points out that we have held that a pre-judgment security order is indistinguishable from an order of attachment. *See Stephens v. Nat'l Distillers &*

*Chem. Corp.,* 69 F.3d 1226, 1229–30 (2d Cir.1995). The Congo further argues that the FSIA provides that the property of foreign states is immune from "attachment[,] arrest[,] and execution." 29 U.S.C. § 1609. We, of course, agree with both of these points. Section 1609, however, explicitly provides for exceptions. *See id.* ("[T]he property of a foreign state shall be immune from attachment arrest and execution *except* as provided in sections 1610 and 1611 of this chapter." (emphasis added)). One such exception is found in section 1610(d)(1), which provides, in pertinent part, that the property of a foreign state "used for a commercial activity in the United States" is not immune from prejudgment attachment if "the foreign state has explicitly waived its immunity from attachment prior to judgment." *Id.* at § 1610(d)(1); *see also id.* at § 1610(a)(1) (providing a similar standard for post-judgment attachment). We find that this exception applies in this case.

▉ A waiver of immunity from prejudgment attachment under Section 1610 "does not require recitation of the 'precise words "prejudgment attachment" in order to waive immunity.'" *Banco de Seguros del Estado v. Mutual Marine Office, Inc.,* 344 F.3d 255, 261 (2d Cir.2003) (quoting *S & S Mach. Co. v. Masinexportimport,* 706 F.2d 411, 416 (2d Cir.1983)). "[A] waiver of immunity from prejudgment attachment must be explicit in the common sense meaning of that word: 'the asserted waiver must demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment in this country.'" *Id.* (same).

▉ The Congo has clearly waived its immunity under the FSIA. The Loan Agreement states that, "[t]o the extent that [the Congo] may in any jurisdiction claim for itself or its assets immunity from suit, execution, attachment (whether in aid of execution, before judgment or other-

wise) or other legal process ... [the Congo] agrees not to claim and waives such immunity to the full extent permitted by the laws of that jurisdiction intending, in particular, that in any proceedings taken in New York the foregoing waiver of immunity shall have effect under and be construed in accordance with the United States Foreign Sovereign Immunities Act of 1976." This language is easily sufficient to trigger the exemption under Section 1610.

The Congo rightly points out that, even with a waiver, the district court's authority is still limited. It may order an attachment only of assets that are (i) in the United States and (ii) used for commercial purposes. 28 U.S.C. §§ 1610(a)(1) & (d)(1). The Congo argues that Judge Preska's order is an attachment of assets that are protected by the FSIA. As we have discussed, that argument fails because it overstates the breadth of Judge Preska's order.

The Congo argues that, under the FSIA, the district court may not require the posting of assets to serve as security without identifying specific commercial assets in the United States. It calls the Court's attention to *Olympic Chartering S.A. v. Ministry of Industry & Trade of Jordan,* 134 F.Supp.2d 528 (S.D.N.Y.2001), which adopted Magistrate Judge Francis' Report and Recommendation. *Olympic Chartering* considered an issue closely analogous to the instant appeal: whether to grant a motion for a post-judgment attachment pursuant to 28 U.S.C. § 1610(c). *Id.* at 536. Troubled by the plaintiff's failure to "specifically indicate which funds [it sought] to attach," the court noted that it could not "adequately review the propriety of attaching the assets of the judgment-debtor," and it denied the motion. *Id.* The Congo argues that the district court's order for pre-judgment security was improp-

er for the same reason—Kensington failed to indicate specifically the non-immune assets it sought to attach.

Kensington responds with *Banco Seguros del Estado v. Mutual Marine Office,* 344 F.3d 255 (2d Cir.2003), where we upheld the decision of an arbitral panel requiring foreign sovereigns to post security. In *Banco Seguros* we expressed our doubts about the applicability of the FSIA to private commercial arbitrations but assumed, *arguendo,* that the statute applied. *Id.* at 260. We then looked closely at the reinsurance agreements at issue, concluded that the foreign sovereigns had waived immunity from pre-hearing attachment, and upheld the attachment *without requiring* the arbitration panel to identify specific assets. *See id.* at 260–62. Kensington asserts that if we did not require the identification of non-immune assets in *Banco Seguros,* we should not do so here.

Ultimately, we need not resolve this disputed issue in the instant appeal. On this record, there is ample reason to place the burden on the Congo, rather than on Kensington or the district court. The Congo has refused to provide discovery to Kensington. In particular, it did not respond to Kensington's interrogatory to "[i]dentify separately each Asset that is currently being used by Defendant for Commercial Activity in the United States or expected to be used by Defendant for Commercial Activity in the United States during the next thirty-six (36) months." Any burden of identification was therefore properly placed on the Congo.

Finding no violation of the FSIA, we likewise find no abuse of discretion. In ordering security, Judge Preska considered (i) the Congo's ability to pay; (ii) whether the Congo was present in the United States; (iii) the Congo's compliance with past court orders; (iv) the extent and scope of discovery; (v) the expected legal costs; and (vi) the merit of the underlying claims.

The Congo argues that Judge Preska failed to consider the merit of the remaining underlying claims. Her decision does focus on the merits of Kensington's claim to recognize the English judgment, which the court had granted six months earlier. Nevertheless, Kensington's likelihood of success on its other claims—particularly Count V, seeking costs under this loan agreement—on the face of the record itself justifies the security for costs. The Congo argues that Counts III and IV, which seek injunctive and declaratory relief, will fail. Even if that is the case, however, Count V has a high likelihood of success.

The Congo also contends that Judge Preska wrongly took judicial notice that "Congo is a[n] oil-rich nation with more than sufficient assets to pay its debts but one of the world's most notorious debtors." The Congo argues that, because it does not have funds to pay all of its debts, taking judicial notice that the Congo may nevertheless pay this debt is error. In other words, the Congo claims that it is unwilling to pay its debts in the name of restructuring its entire debt portfolio, and thus "paying Kensington or other similarly situated individual creditors would have the perverse effect of encouraging the Congo's other creditors to litigate their claims in hopes of securing a windfall, rather than participating in an equitable restructuring process." While it may be in the Congo's interest to seek a global settlement, Judge Preska was quite right to conclude—and the Congo does not squarely dispute—that the Congo has sufficient funds to pay here. This is not a bankruptcy proceeding.

The Congo also disputes Judge Preska's reliance on the Congo's not being present in the United States as a factor weighing towards her decision to grant the security order. The Congo points out that, by her

reasoning, all foreign sovereigns are not present in the United States and that relying on this factor as favoring the posting of security would contravene the FSIA. This argument fails because a domestic presence is merely one factor among many. Non-presence in the United States certainly does not mandate posting security for costs, but it is obviously a factor to consider, notwithstanding the FSIA. Any country, business, or individual that timely pays its debt and acts in good faith would not be required to post security simply because of its non-presence; the importance of the other factors would swamp the non-presence. Consideration of the Congo's non-presence was not in tension with the FSIA.

The Congo protests Judge Preska's conclusion that the Congo has not complied with past court orders, suggesting that its refusal to pay past judgments is due to inability to pay and that its refusal to attend court proceedings cannot justify security. The Congo also argues that its resistance to discovery requests should not count against it. Further, it argues that it should not be faulted for increasing the costs of litigation, since the Congo is the defendant, and it is plaintiff Kensington that escalated costs by advancing legal claims against the Congo to which it must respond.

The district court's contrary conclusions are all reasonable and supported by the evidence. The Congo has refused to comply with court orders; it has resisted supplying Kensington with its discovery requests; and its intransigence has forced Kensington to pour more resources into litigation. Each factor indicates that the Congo is not acting in good faith in this litigation or in other cases, and thus requiring it to post security is reasonable.

Because Judge Preska did not abuse her discretion in ordering the Congo to post security, there is no basis for us to consider mandamus.

The Congo finally requests that we reassign this matter to a different judge on remand because of Judge Preska's "hostility towards the Congo." This argument is of no merit whatsoever, as the Congo does not contend that Judge Preska's "hostility" arises from an extrajudicial source, nor can the Congo satisfy the onerous burden of proving that Judge Preska "display[ed] a dep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). We hasten to add that, should the Congo persist in its pattern of obstruction and recalcitrance, it may find that more and more judges seem hostile.

## CONCLUSION

The order to post security is not appealable under the collateral order doctrine. We therefore dismiss the appeal. Construing the appeal as a petition for mandamus, we deny the petition.