12-4139-cv
*Blue Ridge Investments, L.L.C. v. Republic of Argentina*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: June 19, 2013)                    Decided: August 19, 2013)

Docket No. 12-4139-cv

———————————————————————

BLUE RIDGE INVESTMENTS, L.L.C.,

*Petitioner-Appellee,*

v.

REPUBLIC OF ARGENTINA,

*Respondent-Appellant.*

———————————————————————

Before: CABRANES and B.D. PARKER, *Circuit Judges.*[1]

This appeal arises from an order of United States District Court for the Southern District of New York (Paul G. Gardephe, *Judge*) that denied a motion to dismiss filed by respondent-appellant the Republic of Argentina ("Argentina"). In that motion, Argentina sought dismissal, on, *inter alia*, foreign sovereign immunity grounds, of a petition to confirm an arbitration award filed by petitioner-appellee Blue Ridge Investments, L.L.C. ("Blue Ridge"). Because the denial of

---

[1] Judge Guido Calabresi, originally assigned to the panel, recused himself from this case shortly before oral argument. The two remaining members of the panel, who are in agreement, have determined the matter in accordance with Second Circuit Internal Operating Procedure E(b). *See* 28 U.S.C. § 46(d) & n.1; *cf. United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

Argentina's motion to dismiss is an interlocutory order, we must first decide whether, and to what extent, we have jurisdiction to consider the issues raised in this appeal.

Argentina asserts that: (1) we have jurisdiction under the "collateral order doctrine" to consider whether the District Court erred in concluding that Argentina had waived its foreign sovereign immunity; and (2) we should exercise "pendent appellate jurisdiction" to consider whether the District Court erred in concluding that Blue Ridge, as an assignee, could state a claim to confirm the underlying award of the International Centre for the Settlement of Investment Disputes ("ICSID"). We conclude that we do have jurisdiction to consider the District Court's foreign sovereign immunity decision pursuant to the collateral order doctrine, but we decline to exercise pendent appellate jurisdiction over the District Court's decision that Blue Ridge could state a claim to confirm the ICSID award because that issue is not "inextricably intertwined" with the foreign sovereign immunity decision. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50-51 (1995).

Because our appellate jurisdiction is limited to reviewing the District Court's foreign sovereign immunity decision, we reach the merits of that issue only and hold that the District Court correctly found that Argentina waived its immunity from suit under two exceptions to the Foreign Sovereign Immunities Act: (1) the so-called implied waiver exception, described in 28 U.S.C. § 1605(a)(1), and (2) the so-called arbitral award exception, described in 28 U.S.C. § 1605(a)(6).

Accordingly, we affirm the September 30, 2012 order of the District Court insofar as it concluded that Argentina waived its foreign sovereign immunity, and we remand the cause to the District Court for further proceedings consistent with this opinion.

EDWARD SCARVALONE (GABRIEL BOTTINI, argued *pro hac vice*), Doar Rieck Kaley & Mack, New York, NY, *for Republic of Argentina.*

JOHN N. THOMAS (Clifton S. Elgarten, Birgit Kurtz, *on the brief*), Crowell & Moring LLP, New York, NY, *for Blue Ridge Investments, L.L.C.*

2

JOSÉ A. CABRANES, *Circuit Judge*:

This appeal arises from an order of the United States District Court for the Southern District of New York (Paul G. Gardephe, *Judge*) that denied a motion to dismiss filed by respondent-appellant the Republic of Argentina ("Argentina"). In that motion, Argentina sought dismissal, on, *inter alia*, foreign sovereign immunity grounds, of a petition to confirm an arbitration award filed by petitioner-appellee Blue Ridge Investments, L.L.C. ("Blue Ridge"). Because the denial of Argentina's motion to dismiss is an interlocutory order, we must first decide whether, and to what extent, we have jurisdiction to consider the issues raised in this appeal.

Argentina asserts that: (1) we have jurisdiction under the "collateral order doctrine" to consider whether the District Court erred in concluding that Argentina had waived its foreign sovereign immunity; and (2) we should exercise "pendent appellate jurisdiction" to consider whether the District Court erred in concluding that Blue Ridge, as an assignee, could state a claim to confirm the underlying award of the International Centre for the Settlement of Investment Disputes ("ICSID"). We conclude that we do have jurisdiction to consider the District Court's foreign sovereign immunity decision pursuant to the collateral order doctrine, but we decline to exercise pendent appellate jurisdiction over the District Court's decision that Blue Ridge could state a claim to confirm the ICSID award because that issue is not "inextricably intertwined" with the foreign sovereign immunity decision. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50-51 (1995).

Because our appellate jurisdiction is limited to reviewing the District Court's foreign sovereign immunity decision, we reach the merits of that issue only and hold that the District Court correctly found that Argentina waived its immunity from suit under two exceptions to the Foreign Sovereign Immunities Act: (1) the so-called implied waiver exception, described 28 U.S.C. § 1605(a)(1),[2] and (2) the so-called arbitral award exception, described in 28 U.S.C. § 1605(a)(6).[3]

---

[2] Title 28 U.S.C. § 1605(a)(1) provides that:

3

Accordingly, we affirm the September 30, 2012 order of the District Court insofar as it concluded that Argentina waived its foreign sovereign immunity, and we remand the cause to the District Court for further proceedings consistent with this opinion.

## BACKGROUND

### A. The Underlying Dispute

The following facts are drawn from the written May 12, 2005 Arbitration Award of the ICSID and, unless otherwise noted, are undisputed by the parties.

In 1989, Argentina undertook several economic reforms, including the privatization of several state-owned industries. One of those industries was the "gas transportation" industry. A consequence of this privatization was that Gas del Estado, a state-owned entity, was divided into two gas transportation companies and eight gas distribution companies; one of the new gas transportation companies was Transportadora de Gas del Norte ("TGN"). In 1992, investment in TGN (as well as in the other newly-created companies) was opened to investors. As relevant to this case, CMS Gas Transmission Company ("CMS") purchased shares of TGN from the Argentine government in 1995, acquiring a 25% ownership interest in TGN.[4]

Pursuant to the legislation and regulations enacted during this period of "privatization" in Argentina, licensees of public utilities, like TGN, were able to adjust gas tariffs "every six months in

---

[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver . . . .

[3] Title 28 U.S.C. § 1605(a)(6) provides, in relevant part, that:

[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

[4] CMS later purchased an additional 4.42% of TGN for a total ownership interest of 29.42%.

accordance with the United States Producer Price Index." Joint App'x 82. But in late 1999, following Argentina's economic crisis of the late 1990s,[5] the Argentine government called a meeting "with representatives of the gas companies in order to discuss a temporary suspension of the [United States Producer Price Index] adjustment on gas tariffs." *Id.* at 83. Although the gas companies agreed to a temporary suspension of the adjustment of gas tariffs for a period of six months, the agreement reached with the Argentine government provided that "the costs of the deferral [of the adjustment date] would be recouped" within a year.[6] *Id.* The Argentine government did not indemnify the losses, however, and instead froze the United States Producer Price Index adjustment of gas tariffs indefinitely. Argentina ultimately terminated the rights of licensees of public utilities to adjust tariffs at all.

On July 26, 2001, CMS initiated arbitration before an ICSID tribunal to recover the income lost by the decrease in gas tariff revenue following Argentina's suspension of the adjustment of gas tariffs. In particular, CMS asserted that Argentina had breached its obligations to CMS as a U.S. investor in Argentina, including the obligation to accord it "fair and equitable treatment." *See* Treaty Concerning the Reciprocal Encouragement and Protection of Investment, U.S.-Arg., Nov. 14, 1991, S. Treaty Doc. No. 103-2 (1993) (hereinafter, "Treaty"). The Treaty holds Argentina to certain standards of conduct toward U.S. investors and provides for the resolution of certain disputes between U.S. investors and Argentina through arbitration administered by the ICSID.

On May 12, 2005, the ICSID tribunal entered an award in favor of CMS, requiring Argentina to pay compensation in the amount of $133.2 million plus interest (the "Award"). In particular, the

---

[5] We have seen much litigation arising from Argentina's economic crisis in the late 1990s and early 2000s and its corresponding defaults on various sovereign obligations. *See, e.g.*, *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 175 (2d Cir. 2011) (noting "the preeminence of the Republic of Argentina . . . in the sorry history of defaults on sovereign debt"); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 466 n.2 (2d Cir. 2007) (noting, *inter alia*, "that Argentina has made many contributions to the law of foreign insolvency through its numerous defaults on its sovereign obligations").

[6] This agreement was approved by the Argentine public regulatory agency of the gas industry, ENARGAS.

5

ICSID tribunal found that Argentina "breached its obligations to accord [CMS] the fair and equitable treatment guaranteed in Article II (2)(a) of the [Bilateral Investment] Treaty and to observe the obligations entered into with regard to the investment guaranteed in Article II (2)(c) of the Treaty." Joint App'x 206. On September 8, 2005, Argentina sought to have the Award annulled, but the ICSID Annulment Committee rejected Argentina's application and instead confirmed the Award.

**B. The Initial District Court Proceedings**

In March 2008, CMS filed a "Petition to Enforce Foreign Arbitral Award" in the United States District Court for the Southern District of New York, and sought to attach certain Argentine assets. The proceedings took place before Judge Loretta A. Preska. During the course of that proceeding, Judge Preska determined that CMS had not identified the assets it sought to attach with the specificity required by the FSIA. As a result of that ruling, CMS filed a notice of voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).[7]

In June 2008, Blue Ridge notified Argentina that it had purchased CMS's interest in the Award and, on March 13, 2009, it filed a petition to confirm the Award in the Southern District of New York. The case was assigned to then-District Judge Gerard E. Lynch. In mid-August 2009, Blue Ridge informed Judge Lynch's chambers that it did not intend to move forward with the confirmation proceeding at that time, and wished to withdraw its petition without prejudice. On August 31, 2009, Judge Lynch, noting that the parties stated they had "reached a settlement in principle," issued a so-called "thirty-day order," which stated "that this action is dismissed without costs and without prejudice to restoring the action to the Court's calendar, provided the application to restore the action is made within thirty days."

---

[7] Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides: "Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . ."

6

## C. The Present Confirmation Petition

On January 8, 2010, Blue Ridge filed the present petition to confirm the Award pursuant to Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention"). Argentina then moved to dismiss the petition on several grounds, arguing that: (1) it was immune from suit pursuant to the FSIA; (2) Blue Ridge, as an assignee, could not state a claim under the ICSID Convention to confirm the Award; (3) the petition was barred by *res judicata* because Blue Ridge's prior confirmation petition had been dismissed with prejudice pursuant to the "thirty-day order" issued by Judge Lynch; and (4) the petition was time-barred under New York's applicable one-year statute of limitations. Judge Gardephe, now presiding, denied Argentina's motion to dismiss and rejected each of its arguments. *See Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 375 (S.D.N.Y. 2012).

With regard to Argentina's foreign sovereign immunity defense, Judge Gardephe held that Argentina had waived its immunity from suit pursuant to two exceptions to the FSIA: (1) the implied waiver exception, *see* 28 U.S.C. § 1605(a)(1), and (2) the arbitral award exception, *see id.* § 1605(a)(6). *Blue Ridge Invs.*, 902 F. Supp. 2d at 375. Specifically, he found that Argentina had waived its foreign sovereign immunity under the implied waiver exception because it had signed the ICSID Convention, "which provides for the automatic recognition and enforcement of awards in Contracting States." *Id.* He also found that Argentina had waived its foreign sovereign immunity under the arbitral award exception because "Argentina's agreement to submit its dispute with CMS to [an] arbitration governed by the ICSID Convention constituted a waiver of immunity under Section 1605(a)(6)(B) with respect to [the] recognition and enforcement of the Award." *Id.*

With regard to Argentina's other arguments, Judge Gardephe held that: (1) Blue Ridge, as an assignee, could state a claim to confirm the Award because nothing in the language of the ICSID

7

Convention prevented an assignee from doing so, and because, under New York law,[8] the Award is assignable; (2) the petition was not barred by *res judicata* because the previous dismissals were without prejudice, inasmuch they did not provide the clarity required of a dismissal with prejudice under Fed. R. Civ. P. 41(a)(2)[9]; and (3) the petition was not time-barred because the appropriate statute-of-limitations period is twenty years pursuant to N.Y. CPLR § 211(b). *Blue Ridge Invs.*, 902 F. Supp. 2d at 375 n.7, 381-82, 385, 387.

Argentina filed this appeal, and subsequently sought a certificate of appealability pursuant to 28 U.S.C. § 1292(b) in the District Court.[10] To date, the District Court has not issued a certificate of appealability, and therefore our initial inquiry must be whether (and to what extent) we have jurisdiction to consider the District Court's denial of Argentina's motion to dismiss under the collateral order doctrine. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 714 F.3d 138, 146-47 (2d Cir. 2013) (discussing the collateral order doctrine).

---

[8] Because an ICSID Convention award is entitled to "the same full faith and credit" as a final judgment of a state court, *see* 22 U.S.C. § 1650a(a), district courts in this Circuit have, at times, relied on the procedures of the New York Civil Practice Law and Rules to determine whether an ICSID award is enforceable. *See Siag v. Arab Republic of Egypt*, No. M-82, 2009 WL 1834562, at *2-3 (S.D.N.Y. June 19, 2009); *see also* N.Y. CPLR § 5401 (providing procedures to enforce "any judgment . . . of a court of the United States *or any other court which is entitled to full faith and credit in this state*") (emphasis supplied).

[9] In relevant part, Federal Rule of Civil Procedure 41(a)(2) provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

[10] Title 28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

## DISCUSSION

## A. Jurisdiction

Argentina first asserts that we have jurisdiction under the collateral order doctrine to review the District Court's conclusion that Argentina waived its foreign sovereign immunity.[11] It then asserts that we should exercise pendent appellate jurisdiction[12] and review whether the District Court erred in concluding that Blue Ridge, as an assignee, could state a claim to confirm the Award because, in Argentina's view, the latter issue is "inextricably intertwined" with the former. In other words, Argentina contends that "[a]s a foreign state, [it] is presumptively immune from suit . . . . [and] [n]either the ICSID Convention, nor any other instrument that Blue Ridge has invoked, contains a waiver (express or implied) by [Argentina] of its immunity with respect to Blue Ridge's claim, which is based on an assignment of an ICSID award." Reply Br. 1-2.

### i. The Collateral Order Doctrine

Our appellate jurisdiction is limited to "final decisions" of district courts. 28 U.S.C. § 1291.[13] "The purpose of this rule 'is to provide the parties with an opportunity for a single review of all the questions raised at the trial level . . . and thereby to avoid the waste of time and the delay in reaching trial finality which ensue when piecemeal appeals are permitted.'" *Nelson v. Unum Life Ins. Co. of Am.*, 468 F.3d 117, 119 (2d Cir. 2006) (quoting *Paliaga v. Luckenbach S.S. Co.*, 301 F.2d 403, 406-07 (2d Cir. 1962)).

---

[11] Argentina concedes (and Blue Ridge agrees) that, absent a certificate of appealability from the District Court, we lack jurisdiction to review the District Court's order of September 30, 2012 insofar as it concerns Argentina's *res judicata* and statute of limitations defenses. *See* Reply Br. 23, 27; *see also* Blue Ridge Br. 30-31. As the District Court has not issued a certificate of appealability, we do not consider those two issues for lack of appellate jurisdiction.

[12] Exercising pendent appellate jurisdiction allows us to "review a non-final order if it is 'inextricably intertwined' with or otherwise 'necessary to ensure meaningful review' of an appealable order." *Swarna v. Al-Awadi*, 622 F.3d 123, 141 (2d Cir. 2010) (quoting *Toussie v. Powell*, 323 F.3d 178, 184 (2d Cir. 2003)).

[13] Title 28 U.S.C. § 1291 provides, in relevant part: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."

Although the District Court's decision concluding that Argentina waived its foreign sovereign immunity is an interlocutory order, Argentina argues that we have jurisdiction to review that decision under the collateral order doctrine, "which provides for appellate jurisdiction over a small class of 'collateral' rulings that do not terminate the litigation in the court below but are nonetheless sufficiently 'final' and distinct from the merits to be appealable without waiting for a final judgment to be entered." *Microflo*, 718 F.3d at 146; *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (describing the collateral order doctrine as permitting appeals from "a small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, [and which are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated"). "The requirements for collateral order appeal have been distilled down to three conditions: that an order [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (brackets in original; internal quotation marks omitted); *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994).

We previously have held that a denial of foreign sovereign immunity satisfies the conditions necessary to invoke the collateral order doctrine. *See USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 102, 107 (2d Cir. 2012); *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007). Other circuits have arrived at the same conclusion. *See, e.g., Abelesz v. Erste Grp. Bank AG*, 695 F.3d 655 (7th Cir. 2012); *Terenkian v. Republic of Iran*, 694 F.3d 1122, 1130 (9th Cir. 2012); *Hansen v. PT Bank Negara Indonesia (Persero), TBK*, 601 F.3d 1059, 1062 (10th Cir. 2010).

Despite this general rule, Blue Ridge argues that the circumstances of this appeal do not satisfy the collateral order doctrine because the justifications for the doctrine—*e.g.*, allowing a foreign sovereign to avoid trial and the attendant burdens of litigation—are not relevant here insofar as the

10

underlying proceeding only involves confirming the Award. Put another way, Blue Ridge contends that "[w]here the denial of immunity subjects the sovereign simply to entry of [a] judgment . . . , the sovereign can just as easily and effectively appeal after entry of a final order." Blue Ridge Br. 18.

Blue Ridge's argument relies on three cases from this Circuit. *See Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 240-41 (2d Cir. 2006); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996); *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 113-14 (2d Cir. 1991). In *Kensington* and *Caribbean Trading*, we declined to exercise jurisdiction over appeals from orders requiring foreign governments to post security for costs. *See Kensington*, 461 F.3d at 240; *Caribbean Trading*, 948 F.2d at 115. In doing so, "[w]e distinguished between claims of FSIA immunity *from suit* under Section 1604, denials of which are appealable collateral orders, and claims of FSIA immunity *from attachment*, denials of which are not appealable." *Kensington*, 461 F.3d at 240. In *Transareo*, we held that we lacked jurisdiction to consider the denial of a motion to vacate a default judgment under Rule 60(b)(4),[14] holding that the sovereign's "right not to be subject to a binding judgment may be effectively vindicated following final judgment." 99 F.3d at 541.

Despite the surface appeal of Blue Ridge's arguments, we are not persuaded by them because, unlike the circumstances presented here, *Kensington*, *Caribbean Trading*, and *Transareo* did not involve a "threshold determination of FSIA immunity" from suit. Reply Br. 8. This case therefore is more akin to our recent decision in *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011), which addressed whether the denial of foreign sovereign immunity in a confirmation proceeding was an appealable order under the collateral order doctrine. *Id.* at 388. In that case, we specifically noted that "[t]he Appellants filed an interlocutory appeal . . . from the denial of their motion to dismiss, predicating appellate jurisdiction on the collateral order doctrine,

---

[14] Federal Rule of Civil Procedure 60(b)(4) provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [because] the judgment is void . . . ."

11

which is applicable to an order denying a motion to dismiss that had sought FSIA immunity."[15] *Id.* The fact that *Figueiredo Ferraz* involved a confirmation proceeding did not factor into our analysis.

Accordingly, in light of the general rule that the denial of foreign sovereign immunity is immediately appealable and our recent decision in *Figueiredo Ferraz*, we conclude that we have jurisdiction under the collateral order doctrine to review the District Court's threshold determination that Argentina waived its foreign sovereign immunity pursuant to 28 U.S.C. § 1605(a)(1) (the implied waiver exception) and 28 U.S.C. § 1605(a)(6) (the arbitral award exception).

### ii. Pendent Appellate Jurisdiction

Having concluded that we have jurisdiction to review the District Court's conclusion that Argentina waived its foreign sovereign immunity, we next consider Argentina's request for us to exercise pendent appellate jurisdiction and consider whether the District Court erred in concluding that Blue Ridge, as an assignee, could state a claim to confirm the Award. As we have noted, we have discretion to exercise pendent appellate jurisdiction over related rulings that are otherwise unappealable as long as the related rulings are "'inextricably intertwined' with an issue over which the court properly has appellate jurisdiction." *Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 371 (2d Cir. 2004) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50-51 (1995)).

Pendent appellate jurisdiction is available only (1) when an issue is "inextricably intertwined" with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is "necessary to ensure meaningful review" of an immediately appealable issue. *Swint*, 514 U.S. at 51. These conditions are not met when "we are confronted with two similar, but independent, issues, and resolution of the non-appealable order would require us to

---

[15] The *Figueiredo Ferraz* Court also considered the other issues decided by the district court—forum selection, comity, and forum non conveniens—because the district court had certified those issues for appeal. 665 F.3d 390-91. As noted above, no such certification has been made in this case.

12

conduct an inquiry that is distinct from and broader than the inquiry required to resolve solely the issue over which we properly have appellate jurisdiction." *Myers v. Hertz Corp.*, 624 F.3d 537, 553-54 (2d Cir. 2010) (internal quotation marks omitted). Indeed, the Seventh Circuit has cautioned that "[t]his room for the 'inextricably intertwined' use of pendent appellate jurisdiction should not be stretched to appeal normally unappealable interlocutory orders that happen to be related—even closely related—to the appealable order." *Abelesz*, 695 F.3d at 660.

Despite Argentina's clever framing of the issues presented—*i.e.*, asserting that whether it has waived its foreign sovereign immunity depends on the "party" attempting to confirm the award, *see* Reply Br. 15—we agree with Blue Ridge that whether Argentina has waived its foreign sovereign immunity and whether Blue Ridge, as an assignee, can state a claim to enforce the Award, are two separate issues that are not "inextricably intertwined," *see Chevron Corp. v. Republic of Ecuador*, --- F. Supp. 2d ----, No. 12-1247 (JEB), 2013 WL 2449172, at *4 (D.D.C. June 6, 2013) ("Inquiring into the merits of . . . the arbitrability of the underlying claims . . . would involve an inquiry into the contractual rights of the parties to arbitration and would thus be beyond the reach of the FSIA's cabined jurisdictional inquiry." (internal quotation marks omitted)).

We find the Fourth Circuit's decision in *Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir. 2006), instructive in reaching this conclusion. In that case, the Republic of Sudan ("Sudan") argued, *inter alia*, that (1) the district court erred by rejecting its assertion of foreign sovereign immunity and that (2) the Fourth Circuit should exercise its pendent appellate jurisdiction to consider whether the plaintiff had standing to bring a claim under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301-30308. *Rux*, 461 F.3d at 475. Although the Fourth Circuit considered the district court's foreign sovereign immunity decision under the collateral order doctrine (as we do here), it held that the DOHSA standing issue was "not sufficiently interconnected to justify pendent appellate

13

jurisdiction." *Id.* at 476. In particular, the Fourth Circuit refused to exercise pendent appellate jurisdiction because

> [r]esolution of Sudan's FSIA argument neither required us first to decide nor necessarily decides the issue of standing under DOHSA. In fact, our analysis of the FSIA issue did not address, or even refer to, the issue of standing. Each issue involves a distinct legal concept that does not affect analysis of the other.

*Id.*

Like Sudan in *Rux*, Argentina asserts that we have jurisdiction to consider whether Blue Ridge, as an assignee, can state a claim to confirm the Award because "resolution of [the assignee] issue is necessary to ensure meaningful review of the issue of subject matter jurisdiction [under the FSIA]."[16] *Id.* But as will become apparent, we (like the District Court) are able to determine conclusively whether Argentina waived its foreign sovereign immunity without discussing, much less deciding, whether Blue Ridge, as an assignee, can state a claim to confirm the Award.[17] We are able to do so because the waiver of foreign sovereign immunity is a "jurisdictional" waiver of immunity from suit. *See* 28 U.S.C. § 1605(a). Whether a certain "party" can state a claim and prevail against such a sovereign is a separate inquiry.

Moreover, if we were to accept Argentina's argument about the supposedly "inextricably intertwined" nature of these two issues, then little would prevent Argentina (or other foreign sovereigns) from arguing that *any* affirmative defense is "inextricably intertwined" with the issue of whether it waived its foreign sovereign immunity.[18] For instance, if we held that the question of

---

[16] Indeed, Argentina describes this issue in terms of "standing." *See* Reply Br. 14 ("The district court erred in not dismissing the petition for lack of standing under the ICSID Convention." (emphasis and capitalization omitted)).

[17] Although the District Court noted Argentina's argument that "[it] did not make an agreement to arbitrate 'with' . . . [or] 'for the benefit of' [Blue Ridge]," *Blue Ridge Invs.*, 902 F. Supp. 2d at 373 (first alteration in original), it held that "[n]othing in *the plain language of th[e] [FSIA] provision* suggests that an action 'to confirm an award made pursuant to . . . an agreement to arbitrate" must be brought by the party that entered into the arbitration agreement with the foreign state." *Id.* at 375 n.7 (emphasis supplied) (omission in original) (quoting 28 U.S.C. § 1605(a)(6)).

[18] Indeed, in *Rux*, Sudan argued that the Fourth Circuit should exercise pendent appellate jurisdiction and consider the DOHSA standing issue because "[i]f Plaintiffs have no standing to bring the claims asserted, the Court's decision on the FSIA issue will be an advisory opinion." 461 F.3d at 476 (internal quotation marks omitted). But, as the Fourth Circuit

14

whether Blue Ridge could state a claim to confirm the Award was "inextricably intertwined" with whether Argentina waived its sovereign immunity, then little would prevent Argentina from arguing that it also only waived its sovereign immunity with regard to claims that were brought within the appropriate statute-of-limitations period. We conclude that such a result would permit the limited exception of exercising pendent appellate jurisdiction to swallow the general rule that we lack jurisdiction to consider non-appealable orders of district courts.

In sum, because we can conclusively decide whether Argentina waived its foreign sovereign immunity without addressing whether Blue Ridge, as an assignee, can state a claim to confirm the Award, we conclude that these two issues are not "inextricably intertwined." We therefore refuse to exercise pendent appellate jurisdiction over the latter, non-appealable issue.[19]

## B. The Merits

Because we do not exercise pendent appellate jurisdiction, we only consider, under the jurisdiction conferred by the collateral order doctrine, whether the District Court was correct in holding that Argentina waived its immunity from suit pursuant to two exceptions to the FSIA: (1) the implied waiver exception, *see* 28 U.S.C. § 1605(a)(1); *see also* note 2, *ante*, and (2) the arbitral award exception, *see* 28 U.S.C. § 1605(a)(6); *see also* note 3, *ante*. We review *de novo* a district court's legal conclusions regarding subject matter jurisdiction under the FSIA. *See In re Terrorist Attacks on September 11, 2001 (Saudi Joint Relief Comm., et al.)*, 714 F.3d 109, 113 (2d Cir. 2013).

The only source of subject matter jurisdiction over a foreign sovereign or its instrumentalities in the courts of the United States is the FSIA, and once a defendant "presents a

---

recognized, the same argument could be made with regard to any affirmative defense. *See id.* ("We have decided the issue of subject matter jurisdiction based on a concrete set of facts in the context of a live controversy between the parties. The fact that Plaintiffs' case might eventually succumb to a dispositive defect, such as lack of standing, does not alter the concrete nature of the dispute before us today or the propriety of our ruling.").

[19] Because we do not exercise pendent appellate jurisdiction to consider the District Court's decision that Blue Ridge, as an assignee, can state a claim to confirm the Award, we, of course, express no view as to the merits of that conclusion.

prima facie case that it is a foreign sovereign . . . , the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." *Id.* at 114 (internal quotation marks omitted). In other words, the FSIA "establishes a general rule of immunity from the jurisdiction of the courts in the United States, except as provided by certain statutory exceptions." *Id.*; *see* 28 U.S.C. § 1604. The exceptions to the FSIA's jurisdictional immunity from suit are described in 28 U.S.C. § 1605(a). For the purposes of this appeal, only 28 U.S.C. § 1605(a)(1) (describing the implied waiver exception) and 28 U.S.C. § 1605(a)(6) (describing the arbitral award exception) are relevant.

### i. The Implied Waiver Exception

The implied waiver exception provides that:

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver . . . .

28 U.S.C. § 1605(a)(1). Although this exception "must be construed narrowly," *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 201 (2d Cir. 1999), we agree with the District Court, *Blue Ridge Invs.*, 902 F. Supp. 2d at 374-74, that our decision in *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993), compels the conclusion that Argentina waived its sovereign immunity by becoming a party to the ICSID Convention.[20]

---

[20] We are mindful that courts, including our own, have unintentionally used certain terms of art of public international law interchangeably, but we take this opportunity to recall that, "[u]nder general principles of treaty law, a State's *signing* of a treaty serves only to authenticate its text; it does not establish the signatory's consent to be bound. A State only becomes bound by—that is, becomes a party to—a treaty when it ratifies the treaty." *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 256 (2d Cir. 2003) (emphasis in original) (internal quotation marks, citation, and alteration marks omitted). As a general matter, "[t]he United States becomes a 'party' to a treaty—that is, becomes contractually bound to obey its terms—only when, upon concurrence of 'two thirds of the Senators present,' U.S. Const. art. II, § 2, cl. 2, *the President*

16

In *Seetransport*, we held that by becoming a party to the Convention on the Recognition and Enforcement of Arbitral Awards ("CFREAA"), a foreign sovereign implicitly waived its immunity because the terms of the CFREAA provided, *inter alia*, that "'[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon . . . .'" 989 F.2d at 578 (quoting 9 U.S.C. § 201). In other words, we held that "when a country becomes a [Contracting State] to the [CFREAA], by the very provisions of the [CFREAA], the [Contracting] State must have contemplated enforcement actions in other [Contracting] States." *Id.*

The provisions of the ICSID Convention require us to reach the same conclusion here. As the District Court noted, "[p]ursuant to Article 54 of the Convention, [e]ach Contracting State shall recognize an award rendered pursuant to th[e] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." *Blue Ridge Invs.*, 902 F. Supp. 2d at 374 (internal quotation marks omitted). In light of the enforcement mechanism provided by the ICSID Convention, we agree with the District Court that Argentina "must have contemplated enforcement actions in other [Contracting] [S]tates," including the United States. *Seetransport*, 989 F.2d at 578.[21]

---

ratifies the treaty." *Id.* at 256 n.32 (emphasis supplied). It is only upon *ratification* that the United States, or any other country, becomes bound by a treaty—that is, becomes a "contracting state."

Argentina has been a party to the ICSID Convention since 1994. The United States has been a party to the ICSID Convention since 1966. *See List of Contracting States and Other Signatories to the Convention*, Int'l Ctr. for the Settlement of Inv. Disputes, *available at* https://icsid.worldbank.org/ICSID/FrontServlet?requestType= ICSIDDocRH&actionVal=ContractingStates&ReqFrom=Main.

[21] In reaching this conclusion, we note that the only other court in this Circuit to have considered this issue reached the same conclusion. *See Liberian E. Timber Corp. v. Gov't of Republic of Liberia*, 650 F. Supp. 73, 76 (S.D.N.Y. 1986), *aff'd without opinion*, 854 F.2d 1314 (2d Cir. 1987) ("Liberia, as a [party] to the [ICSID] Convention, waived its sovereign immunity in the United States with respect to the enforcement of any arbitration award entered pursuant to the Convention.").

17

### ii. The Arbitral Award Exception

In addition to the implied waiver exception, the District Court also correctly concluded that

Argentina waived its sovereign immunity pursuant to the arbitral award exception.  The arbitral

award exception provides, in relevant part, that

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6).

To our knowledge, every court to consider whether awards issued pursuant to the ICSID

Convention fall within the arbitral award exception to the FSIA has concluded that they do.  *See, e.g.,*

*Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) ("Nor, as several courts

have noted, is there any doubt that ICSID arbitral awards fall within th[e] [arbitral award] immunity

exception."); *Funnekotter v. Republic of Zimbabwe*, No. 09 Civ. 8168(CM), 2011 WL 666227 at *2

(S.D.N.Y. Feb. 10, 2011) (similar); *Siag v. Arab Republic of Egypt*, No. M-82, 2009 WL 1834562

(S.D.N.Y. June 19, 2009) (entering a judgment recognizing an ICSID Convention award against

Egypt).  We agree.  Indeed, inasmuch as (1) the Award was issued pursuant to the ICSID

Convention, which is "a treaty or other international agreement in force for the United States calling

for the recognition and enforcement of arbitral awards," 28 U.S.C. § 1605(a)(6)(B),[22] and (2) the

United States and Argentina are both parties to the ICSID Convention, *see* note 20, *ante*, Argentina's

---

[22]  After the United States became a party to ICSID Convention, Congress passed "implementing legislation," which provided that "[a]n award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID Convention] shall create a right arising under a treaty of the United States.  The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a(a).

agreement to submit its dispute to arbitration under the ICSID Convention constituted a waiver of immunity from suit pursuant to 28 U.S.C. § 1605(a)(6)(B).[23]

## CONCLUSION

To summarize, we hold that:

(1)     We have jurisdiction to consider the District Court's rejection of Argentina's assertion of foreign sovereign immunity under the collateral order doctrine;

(2)     We decline to exercise pendent appellate jurisdiction to consider whether the District Court erred in concluding that Blue Ridge, as an assignee, could state a claim to confirm the ICSID award because that issue is not "inextricably intertwined" with the District Court's foreign sovereign immunity decision;

(3)     The District Court correctly concluded that Argentina waived its foreign sovereign immunity pursuant to two separate and independent exceptions to the immunity from suit provided by the Foreign Sovereign Immunities Act: (1) the implied waiver exception described in 28 U.S.C. § 1605(a)(1), and (2) the arbitral award exception described in 28 U.S.C. § 1605(a)(6).

For the reasons stated, the September 30, 2012 order of the District Court is **AFFIRMED** insofar as it concluded that Argentina waived its foreign sovereign immunity. The cause is **REMANDED** to the District Court for further proceedings consistent with this opinion.

---

[23] Of course, in concluding that awards issued pursuant to the ICSID Convention fall within the arbitral award exception to the FSIA under 28 U.S.C. § 1605(a)(6), we have no reason to consider the distinct question of whether Argentina may assert immunity from the execution of judgment over specific assets. *See, e.g, NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254, 257 (2d Cir. 2012) ("As a general matter, the property of a foreign state present in the United States is immune from execution in satisfaction of a debt. Such property may be attached and executed upon only when one of the FSIA's exceptions applies." (citing 28 U.S.C. § 1609)).